Van Voorhis, J.
 

 Plaintiff has attempted to commence an action in New York State against a Florida corporation by the service of a summons in New York City on one Abraham Plotsker, who is a member of a partnership doing business in New York City as Broadway Resort Service. Defendant, Surf Properties, Inc., operates under the name of Belmar Hotel of Miami Beach. Appearing specially, defendant moved to vacate this service of process. On stipulation the application was referred to an Official Referee to try and determine. An order was entered on the Official Referee’s report denying defendant’s motion, which was affirmed by the Appellate Division, Second Department, Nolah, P. J., and Beldock, J., dis-
 
 *478
 
 seating and voting to reverse the order and to grant the motion vacating the service of the summons in the following memorandum : “ On the facts here presented, appellant’s activities within this State do not constitute the doing of business here.” Leave to appeal was granted by the Appellate Division and the following question certified: 1 ‘ Was the order of the Special Term properly made? ”
 

 The only witness who testified for either side was Abraham Plotsker. Whether defendant is doing business in New York State depends upon his testimony, the substance of which is as follows:
 

 Abraham Cohen and Plotsker conducted a partnership ‘ ‘ in the travel agency and hotel representation business ” under the name of Broadway Resort Service. They have been engaged in this business for about 10 years. Through their office at 1650 Broadway they represent between 40 and 50 hotels, of which 25 or 30 are at Miami Beach, in Florida. Among these hotels is defendant, known as Belmar. Broadway has 25 telephones, and the hotels which they represent (including Belmar) have telephone listings in the New York City directory under these telephone numbers. From 8 to 10 hotels are listed under the same number. When anyone calls such a number, Broadway answers. If, for example, the person calling inquires, “Is this the New York office of the Belmar Hotel”, the clerk at Broadway answers “Yes”. Broadway sends out literature supplied by its hotels to people who ask for it on the telephone. Neither defendant nor any of the hotels maintain office space in Broadway’s office, nor do they have employees in common. Broadway does not pay for defendant’s advertisements in
 
 The New York Times
 
 or other newspapers, nor does Broadway place these ads. When a customer of Belmar telephones Broadway, Plotsker testified “ we are willing to answer any question that the party at the other end of the line may want to know. Generally speaking, they want to know what are the prices, and they want literature to be sent, which we will send out to the prospective guest. If they’re interested in making a reservation, we will talk to them about the reservation, and we will accept the same, provided they sent us a deposit. No reservation will be taken simply on a mere telephone call.
 

 
 *479
 
 “ Generally speaking, we are notified by the hotel as to the extent of availability of space. Unless we hear from the hotel to the contrary, that they have no space, or that we have to be careful, space is tight, we will simply tell the people on the phone, reservations are available.
 

 “We take down the name and the address, telephone number, date when they plan to go to Miami, how long do they plan to stay. We will argue out with them the type of accommodation that they want, whether they want a ten-dollar room or fifteen-dollar room, or whatever it is. And, at the end, well, we tell them, ‘ Well, you send us a deposit and you will receive a receipt and a confirmation of the reservation. ’
 

 “ Q. Now, have there been times in the past, where people have called you in reference to reservations and, upon receipt of a deposit, have you found that these reservations have been later cancelled, by the Belmar Hotel? A. Not accepted by the Belmar?
 

 “ Q. Excuse me; rather, not accepted by the Belmar? A. Definitely. • Very often that happens. Because we will not confirm a reservation definitely. We ask the people to make out the checks, the deposit checks, to the Belmar Hotel. We send it down, that check together with one of our receipts, to the Belmar. If it’s okay, they accept it, if not, they send it back to us, simply that they do not have the space available. No reservation is final, until accepted by the hotel.”
 

 Once there was a written agreement between Broadway and Belmar, but now they operate under oral agreement. The substance of this agreement is that Broadway gives Belmar one of Broadway’s telephone numbers for Belmar to insert in their advertisements in New York City, and Broadway gives information in answer to inquiries concerning availability of space and the making of deposits for confirmation, and records the names and addresses of people who call which are submitted to Belmar. At the year end Belmar receives a list of all the reservations that have been transmitted through the office of Broadway. For doing these things, Broadway receives $750 a year from Belmar, and occasionally also a bonus. There is no agreement about payment of a bonus. The stationery of Broadway bears no indication of any connection with Belmar. No bills of Belmar are paid by Broadway, nor does Broadway
 
 *480
 
 cash checks that are made for reservations at Belmar. Although Belmar has no other similar agency in New York City, a hundred different travel agencies there will take reservations for Belmar. About $10,000 of Belmar’s business goes through Broadway in one year. Belmar sometimes sends to Broadway the names and addresses of people whose patronage is to be solicited.
 

 It has been held that the mere solicitation of business for an out-of-State concern is not enough to constitute doing business in this State
 
 (Holzer
 
 v.
 
 Dodge Bros.,
 
 233 N. Y. 216;
 
 Yeckes-Eichenbaum, Inc.,
 
 v.
 
 McCarthy,
 
 290 N. Y. 437;
 
 Ray D. Lillibridge, Inc.,
 
 v.
 
 Johnson Bronze Co.,
 
 220 App. Div. 573, affd. 247 N. Y. 548;
 
 Tauza
 
 v.
 
 Susquehanna Coal Co.,
 
 220 N. Y. 259). In
 
 International Shoe Co.
 
 v.
 
 State of Washington
 
 (326 U. S. 310, 314), the United States Supreme Court said that “ solicitation * # * plus some additional activities there are sufficient to render the corporation amenable to suit ”.
 

 The only activities claimed to have been conducted in New York State, aside from the solicitation of prospective customers for Belmar in Miami, was the reception of hotel reservations in New York and their transmission to Miami. The Official Referee construed this as meaning that during off seasons Broadway was permitted to use its own judgment and discretion in accepting hotel customers. This is hardly borne out by the testimony. It is clear from what Plotsker said on the stand (which is all the evidence there is) that reservations are not accepted by Broadway at New York for Belmar, but are received subject to confirmation by Belmar in Florida. The point about the slack seasons is that during seasons when the hotel is not fully occupied, anyone who applies can get a room. Therefore, receipt of an application for a reservation by Broadway in New York is equivalent at such times to getting the reservation, for the reason that the hotel is not full. This appears to be all that is signified by the standing instructions in the summertime to accept any and all reservations that come through, in the absence of word to the contrary. That does not contradict nor alter the legal effect of the testimony that the reservations do not become final until accepted by the hotel. The mention of Broadway’s location in the New
 
 *481
 
 York City advertising as the office of the hotel, and the use of one of its telephone numbers in common with 6 or 7 other Florida hotels, does not alter the circumstance that this is mere solicitation in New York City of orders for hotel space in Florida.
 

 Elish
 
 v.
 
 St. Louis Southwestern Ry. Co.
 
 (305 N. Y. 267), relied on by plaintiff, is not to the contrary. That case recognizes that mere solicitation of business by a foreign corporation within this State is insufficient to make it subject to the jurisdiction of our courts, but notes that at that foreign corporation’s office at 165 Broadway it conducted transactions relating to its financial structure. Directors’ meetings were held there. This meant that general powers involving judgment and discretion were vested in agents in New York State (Yeckes-
 
 Eichenbaum, Inc.,
 
 v.
 
 McCarthy,
 
 290 N. Y. 437,
 
 supra).
 
 It is in this context that section 229 of the Civil Practice Act refers to a summons served on a “ managing agent ” of a foreign corporation. Although Broadway discusses with prospective customers the different kinds of accommodations available at Belmar, and endeavors to persuade them to take the accommodations that will be most profitable for the hotel, that kind of activity pertains to salesmanship generally. It is not the sort of exercise of judgment and discretion within the State • which is regarded as controlling in the decisions cited. Management in New York is quite apparently not being purchased for $750 per year. Broadway’s services amounted to little more than rendering telephone service and mailing brochures, which Broadway did simultaneously for nearly 50 other hotels, 25 or 30 of which were also in Florida. Broadway was little more than a travel agency (cf.
 
 Guile
 
 v.
 
 Sea Is. Co.,
 
 11 Misc 2d 498, affd. 272 App. Div. 881).
 

 The order should be reversed, the question certified answered in the negative, and appellant’s motion to vacate service of process granted, with costs in all courts.
 

 Chief Judge Conway and Judges Desmond, Dye, Fuld, Fboessel and Burke concur.
 

 Order reversed, with costs in all courts, and matter remitted for further proceedings in accordance with the opinion herein. Question certified answered in the negative.