354 F.2d 428
 Noren HARVEY, an Infant, and Bivenne Harvey, an Infant, by their Guardian ad Litem, Tuck Harvey, and Heidi and Tuck Harvey, Individually, Plaintiffs-Appellants,
v.
CHEMIE GRUNENTHAL, G.m.b.H., Defendant-Appellee.
 No. 52.
 Docket 29048.
 United States Court of Appeals Second Circuit.
 Argued October 19, 1965.
 Decided December 15, 1965.
 
 Robert Klonsky, Brooklyn, N. Y., Morris Hirschhorn, New York City, for plaintiffs-appellants.
 Walter Herzfeld, Herzfeld & Rubin, Cecelia H. Goetz, Bernard J. Wald, New York City, for defendant-appellee.
 Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 Appellant Tuck Harvey, father of the infant appellants Noren Harvey and Bivenne Harvey, met his future wife, also an appellant, the then Heidi Fischer, a resident and citizen of West Germany, while they both were students in Italy. They decided to marry and to take up permanent residence in New York, and were married on Long Island in June 1960.
 
 
 2
 When Heidi came to this country she brought with her a supply of pills called "Contergan," prescribed by a German doctor for the relief of insomnia and nervous tension, and purchased by her in Germany. The "Contergan" pills were created, manufactured, and distributed by the defendant Chemie Grunenthal, G.m.b.H., a West German pharmaceutical concern with its principal place of business in Stolberg, Rhineland, Germany.
 
 
 3
 Mrs. Harvey took "Contergan" from June of 1960 through September 1960, when she became pregnant. She continued to use "Contergan" during the period of her pregnancy in order to relieve nervous tension and insomnia. On May 18, 1961 Mrs. Harvey gave birth to Noren and Bivenne Harvey. Both children were born with serious deformities; Noren was born with shortened and warped arms and hands, a condition known as phocomelia, Bivenne Harvey was born with duodenal atresia and a recto-perineal fistula among other deformities.
 
 
 4
 Subsequently it was established that "Contergan" contained Thalidomide, an element proven highly toxic and especially dangerous to infants in foetus. Contending that Noren's and Bivenne's deformities had been caused by the thalidomide content of the "Contergan" that Mrs. Harvey had ingested, the appellants in the fall of 1963 filed suit against the defendant company in the Southern District of New York, alleging negligence and breach of warranty. The complaint alleged that the court had jurisdiction in personam over the foreign corporation under § 302(a) (2) of the New York Civil Practice Law and Rules. The text of this section, insofar as it is relevant to the disposition of this case, is set forth in the margin.[1] The defendant company appeared specially and moved to dismiss the complaint on the ground that the court lacked in personam jurisdiction over it. On May 15, 1964, in a brief opinion, the district court dismissed the complaint, holding it had no jurisdiction over the defendant under New York State law as it stood before the adoption of the new New York Civil Practice Law and Rules,[2] and that to ground jurisdiction on CPLR § 302(a) (2) would be inconsistent with Feathers v. McLucas, 41 Misc.2d 498, 245 N.Y.S.2d 282 (Sup.Ct. 1963).
 
 
 5
 The appellants appealed. By order of this court, dated October 20, 1964, the appeal was suspended pending the disposition in the New York courts of an appeal in Feathers v. McLucas, and clarification of the scope of CPLR § 302(a) (2) by the New York Court of Appeals. The New York "long arm" statute received an authoritative construction by that state's highest court in May of 1965. Longines-Wittnauer Watch Co., Inc. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S. 2d 8, 209 N.E.2d 68 (1965), cert. denied, Estwing Mfg. Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).[3] This appeal was then allowed to proceed.
 
 
 6
 We turn to New York law to resolve the jurisdictional issue presented by this appeal because in the absence of a federal statute or rule enlarging the jurisdiction of federal courts "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits * * *." Arrowsmith v. United Press, Int'l, 320 F.2d 219, 223 (2 Cir. 1963). See Gelfand v. Tanner Motor Lines, Ltd., 339 F.2d 317 (2 Cir. 1964).
 
 
 7
 Beyond peradventure Chemie Grunenthal's scattered activity in New York State did not constitute a nexus between New York and Chemie Grunenthal sufficient to render it amenable to suit in the courts of New York under New York's decisional law prior to the adoption of the new CPLR. Chemie Grunenthal had no office in New York State and never had qualified to do business there. When the company had filed patent and trademark applications in Washington it had employed on occasion New York counsel and a New York patent agent. Also Chemie Grunenthal had entered into some product license agreements with certain American companies, and one such agreement had been concluded with Richardson-Merrell, Inc., a leading American pharmaceutical concern with offices in New York City. Finally, some of Grunenthal's shipments of samples to the United States had entered this country through the port of New York for shipment elsewhere beyond New York. This catalogue of irregular activity constitutes the sum total of the defendant's operation in New York. Under the decisional law of New York prior to the adoption of the CPLR a foreign corporation not authorized to do business in New York was amenable to suit in that state only if it was engaged "in such a continuous and systematic course of `doing business'" in that state "as to warrant a finding of its `presence'" in the state. Simonson v. International Bank, 14 N.Y. 2d 281, 285, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 429 (1964). See Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). The scattered activity of Chemie Grunenthal was not systematic and continuous; as the district judge correctly held, it cannot support a finding that the defendant company was present under pre-CPLR law.
 
 
 8
 Appellants thus must stake their claim that jurisdiction in personam exists on CPLR § 302(a) which provides in pertinent part that a court may exercise jurisdiction in personam as to a cause of action arising from its commission of "a tortious act within the state." Appellants claim jurisdiction is proper under this subsection in the present case — even though the allegedly defective "Contergan" was manufactured and purchased in Germany — because the defendant company failed to send warnings into New York alerting people like Heidi Harvey that the drug was unsafe. This claim is grounded in a broad enough construction of the language "a tortious act within the state" to encompass the in-state consequences of an out-of-state wrongful act, or the failure to warn persons within the state of the potential harm resulting from the earlier out-of-state wrongful act. State courts of other jurisdictions have so construed a similarly worded provision. See Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). But the New York Court of Appeals, relying on the legislative history of CPLR § 302(a) (2), has recently held that "the mere occurrence of the injury in the State * * * cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording." Longines-Wittnauer Co., Inc. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 21, 209 N.E.2d 68, 77 (1965). Of course, it is arguable that in the present case the tortious act occurred in New York. Unfortunately for the appellants this view is inconsistent with the holding of the New York Court of Appeals in one of the three factual situations considered by the court in Longines-Wittnauer Co., Inc. v. Barnes & Reinecke, Inc., supra. There the New York court held that when an allegedly mislabeled and defective geologist's hammer was shipped by its Illinois manufacturer into New York where it was purchased by a child who was subsequently injured when the hammer head fragmented in ordinary use, the tortious act occurred out of state. Though it was quite foreseeable that the consequence of the negligent manufacture in Illinois might cause injury elsewhere than in Illinois, the New York court placed the locus of the tortious act in Illinois, the place of the defective manufacture. This construction of New York's "long arm" statute is binding upon us and therefore we hold that CPLR § 302(a) (2) does not support the appellant's allegation that we have jurisdiction in personam over the appellee.[4]
 
 
 9
 In the reply brief for the appellants they urge that CPLR § 302(a) (1) sustains jurisdiction in the present case. This section allows the court to exercise jurisdiction over a foreign corporation if the corporation "transacts any business within the state," and the cause of action sued upon is one "arising from" this transaction of business. It is doubtful whether the scattered activity of Chemie Grunenthal in New York constitutes the transaction of business within the state. But even if we could hold that the engaging of a New York attorney, the conclusion of a product license agreement with a company with offices in New York City, and the shipment of samples through a New York port constituted the transaction of business in New York, the appellants would still fail to come within CPLR § 302(a) (1), for the appellants' cause of action was not one "arising from" this business activity.
 
 
 10
 The judgment of the court below dismissing the complaint for want of personal jurisdiction over the defendant is affirmed.
 
 
 
 Notes:
 
 
 [1]
 § 302. Personal jurisdiction by acts of non-domiciliaries
 (a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
 
 
 [1]
 transacts any business within the state; or
 
 
 [2]
 commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or * * *
 
 
 [2]
 New York Civil Practice Law and Rules § 301 provides that the new law shall not detract from the jurisdiction that might have been acquired under New York law before the adoption of the new CPLR
 
 
 [3]
 Longines-Wittnauer represents a consolidation of three cases that construed § 302 of the new CPLR. Feathers v. McLucas is one of the three cases disposed of in the court's opinion
 
 
 [4]
 The present case poses no constitutional issue inasmuch as we hold that New York's "long arm" statute, as construed by the courts of New York, does not subject the defendant to the jurisdiction of that state's courts. This construction has not escaped criticism. See Note, 66 Colum.L.Rev. 199 (1966)