MANCHESTER MODES, INC., Plaintiff-
Appellant,

v.

Adolph P. SCHUMAN, Defendant-
Appellee.

No. 689, Docket 34465.

United States Court of Appeals,
Second Circuit.

Argued April 10, 1970.

Decided April 28, 1970.

Robert C. Osterberg, New York City
(Abeles & Clark, New York City, of
counsel), for plaintiff-appellant.

Edward R. Korman, New York City
(Paul, Weiss, Goldberg, Rifkind, Whar-
ton & Garrison, and Edward N. Costik-
yan, New York City, of counsel), for
defendant-appellee.

Before WATERMAN, FRIENDLY
and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge.

This appeal from an order of the Dis-
trict Court for the Southern District
of New York dismissing a complaint for
improper venue brings us for the first
time a question of the interpretation of
28 U.S.C. § 1391(c) that has divided
the district courts and the commentators
ever since its enactment twenty years
ago. We join the two other courts of
appeals which have considered the issue
in holding that the second clause of the
section does not refer to a corporation as
plaintiff.

The action here sought injunctive re-
lief and damages for adverse publicity
resulting from defendant's alleged in-
stigation of a lawsuit by his controlled
corporation against plaintiff in the Dis-
trict Court for the Northern District of
California. Federal jurisdiction was
founded only on diversity of citizenship.
Although not licensed under New York
law, plaintiff, a Connecticut corporation,
claims to be doing business in Manhat-
tan. Defendant, a resident of California,
was served while in the Southern Dis-
trict. The applicable venue statute, 28
U.S.C. § 1391(a), says that such an ac-
tion may "be brought only in the judicial
district where all plaintiffs or all defend-

ants reside, or in which the claim arose." It is common ground that venue was improper unless plaintiff was a resident of the Southern District of New York.

■ To sustain its claim of residence plaintiff points to 28 U.S.C. § 1391(c), which was added in the revision of 1948, and particularly the second clause. The section reads:

A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Although we are in agreement with Judge Sobeloff's view that, despite its seeming generality, the second clause was no more intended to apply to a corporate plaintiff than the first, Robert E. Lee & Co. v. Veatch, 301 F.2d 434 (4 Cir. 1961), cert. denied, 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962),[1] the considerable amount of water that has run under the bridge in the last decade and the continued division of opinion of district courts and commentators lead us to state the reasons for our conclusion.

The parties agree we should begin with the statutory language. Both assert its meaning to be plain, although opposite. Defendant says that "such corporation" in the second clause must mean a defendant corporation since that is what the first clause is talking about. Judge Sobeloff thought "[t]his would certainly be the more natural usage of the 'such.'" 301 F.2d at 438. Plaintiff responds that the first clause makes a corporation suable "in any judicial district in which it is incorporated or licensed to do business or is doing business"; that this applies to every corporation; and hence "such" means "any." Professor Wright agrees and hopes "it will ultimately be held that § 1391(c) means what it says," Federal Courts 156 (2d ed. 1970)—a wish presumably shared by all.[2] If we were obliged to place decision on mere textual analysis, we would also consider defendant's reading "the more natural." Had Congress meant what Professor Wright is sure it meant, it discharged its task of expression rather poorly. All doubts could have been resolved simply by saying "a corporation" rather than "such corporation," especially if the two clauses were broken apart. However, we are content to assume that either reading is textually possible, and must therefore look further for help.

■ Section 1391(c) had a considerable background in history, much of which is reviewed in the two opinions in Neirbo Co. v. Bethlehem Shipbuilding, Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), and in 1 Moore, Federal Practice ¶ 0.142[5.–3] at pp. 1490–92 (1964). As corporations spread their activities through the country, states increasingly made them subject to suit wherever they were "doing business" or could be "found." A corresponding adjustment in federal procedural law, however, did not occur; for venue purposes, the definition of corporate residence as the state of incorporation remained the rule. Thus, §

---

1. Followed in Carter-Beveridge Drilling Co. v. Hughes, 323 F.2d 417 (5 Cir. 1963) (per curiam), and by the district court in this case.

2. Not suprisingly the same view with respect to the meaning of the second clause is taken in 1 Barron & Holtzoff, Federal Practice and Procedure § 80 at 387–88 (Wright ed. 1960). In an article written while the 1948 revision was under way, Professor Wechsler stated rather cursorily that the proposed § 1391(c) would enable a corporate plaintiff in a diversity case "to lay venue in any district in which it does business." Federal Jurisdiction and the Revision of the Judicial Code, 13 Law and Contemporary Problems 216, 240 n. 126 (1948). Five years later he and his distinguished co-author seemed to have become doubtful that the clause had this "drastic and unannounced effect." Hart & Wechsler, The Federal Courts and the Federal System 959 (1953). Professor Moore is "sympathetic with the result reached by the courts that hold § 1391(c) applies to a corporate plaintiff, as well as to a corporate defendant" but does "not believe they have correctly construed the provision," 1 Federal Practice ¶0.142 [5.–3] at 1503 (1964).

51 of the then Judicial Code, which limited venue in diversity actions to "the district of the *residence* of either the plaintiff or the defendant," constituted a serious barrier to suits in federal court against foreign corporations doing enough business to be suable in the courts of the state where the federal court sat. *Neirbo* went a considerable way to meeting the problem by resuscitating Ex parte Schollenberger, 96 U.S. 369, 24 L.Ed. 853 (1878), and holding that a foreign corporation, which had qualified to do business in a state and consented to be sued there, had "waived" any claim of nonresidence in any district of the state under the federal venue statute. A considerable way, but not by any means the whole way. Perhaps the worst deficiency of *Neirbo* was that, at least by the weight of authority, a corporation's failure to comply with a state's law requiring that it consent to be sued was held to negate a "waiver." See Moore, *supra*, at 1492 n. 16. Another was that a qualification on the consent, notably against causes of action arising outside the state, would equally qualify the waiver with respect to federal venue. North Butte Mining Co. v. Tripp, 128 F.2d 588 (9 Cir. 1942). Section 1391(c) meant to end these quiddities. Taking out a license to do business or doing business in a state other than the chartering state was to make a corporate defendant a resident there for federal venue purposes under § 1391 (a) and (b), whether it so intended or not. See Moore, *supra*, at 1493. No one entertains any doubt on this score, even though the Reviser's Note, fn. 3, *infra*, did not signal the change.

Appellant's argument is that this important objective was fully accomplished by the first clause of § 1391(c) and the "canon" directing a court to avoid redundancy thus requires us to assume that the second clause had another purpose, namely, to give foreign corporations federal venue privileges as plaintiffs coextensive with their obligations as defendants. We find the argument defective in several particulars.

To begin, we do not accept the premise. The first clause of § 1391(c) did most of the necessary work but not all. One problem it did not reach was that of Suttle v. Reich Bros. Construction Co., 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614 (1948), decided a few months before enactment of the 1948 Code, although we concede there is no evidence the legislators knew about it or would have cared overmuch if they did. A Mississippi resident there brought suit in the Eastern District of Louisiana against a Texas corporation, which had qualified to do business in Louisiana, and a partnership whose members resided in the Western District. The applicable statute, now 28 U.S.C. § 1392(a), provided that "if there are two or more defendants, residing in different districts of the State, it [the suit] may be brought in either district." The holding was that although venue could be laid against the Texas corporation in any district of Louisiana under the *Neirbo* rule, that did not do the trick of making the partnership suable outside its own district since the Texas corporation "resided" only in Texas. The same result would follow if the first clause of § 1391(c) stood alone—not, however, with the second clause added.[3] A more important problem for which the second clause was needed concerned special statutes permitting venue

---

3. Judge Soboloff thought the obscure Reviser's Note was directed to just this point, 301 F.2d at 438. Perhaps so but only an exceptionally erudite Congressman would have so understood it. The Note reads:

In subsection (c), references to defendants "found" within a district or voluntarily appearing were omitted.

The use of the word "found" made said section 111 ambiguous. The argument that an action could be brought in the district where one defendant was "found," was rejected in Camp v. Gress, 1919, 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997. However, this ambiguity will be obviated in the future by the omission of such reference.

to be laid at the "residence" of the defendant. At the time of the *Robert E. Lee* decision this may have seemed a dubious argument for non-redundancy in light of Fourco Glass Co. v. Transmirra Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed. 2d 786 (1957), where the Court had declined to apply the second clause of § 1391(c) to 28 U.S.C. § 1400(b), which provided that a suit for patent infringement "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." However, the Court later took a quite different attitude as regards special statutes permitting venue at the residence of the defendant. In Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), it held the second clause of § 1391(c) applicable to the provision of the Jones Act, 46 U.S.C. § 688, placing jurisdiction "under the court of the district in which the defendant employer resides or in which his principal office is located." Mr. Justice Harlan, who had dissented in *Fourco,* put that decision upon a narrow basis, 384 U.S. at 206–207, 86 S.Ct. at 1395.

Beyond this we find it exceedingly hard to believe Congress had any idea that by enacting § 1391(c) it was allowing a corporation which did business in a multitude of districts to sue in any of them irrespective of the residence of the defendant, although a natural person similarly doing business in a number of districts could sue only in the district of his residence or in that of the defendant. The problem of venue with respect to corporate defendants had been bothersome, particularly because the statute did not then allow venue to be laid apart from residence in a district "in which the claim arose"—a provision added only in 1966, 80 Stat. 1111. As indicated, *Neirbo* had done a good deal to alleviate the problem but not enough. A broadened conception of residence for corporate defendants was thus "a response to a general conviction that it was 'intolerable if the traditional concepts of "residence" and "presence" kept a corporation from being sued wherever it was creating liabilities.'" Transmirra Prods. Corp. v. Fourco Glass Co., 233 F.2d 885, 887 (2 Cir. 1956), rev'd, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957).[4] There is no evidence of similar concern over the problem of venue for corporate plaintiffs. To have provided that for that purpose a corporation should be deemed to "reside" elsewhere than in its state of incorporation would have been a sharp break with the tradition contemporaneously summarized by the Chief Justice in Suttle v. Reich Bros. Construction Co., *supra,* 333 U.S. 163, at 166–167, 68 S.Ct. 587, 92 L.Ed. 614. Yet Congress had been told, somewhat inaccurately to be sure, that "Venue provisions have not been altered by the revision" and also that "care has been taken to make no changes in the existing laws which would not meet with substantially unanimous approval." See Fourco Glass Co. v. Transmirra Corp., *supra,* 353 U.S. at 227, 77 S.Ct. at 791 n. 8.[5] It would have been a bold man who believed that a proposal to allow a corporate plaintiff doing business in numerous districts to sue an individual defendant in any one where he might be caught for service of process and to put the latter to the hazards of a motion to transfer under 28 U.S.C. § 1404(a), would have com-

4. In Pure Oil Co. v. Suarez, *supra,* 384 U.S. at 204, 86 S.Ct. at 1395 n. 3, the Court quoted this statement and said that, despite the reversal, "the validity of this general observation was in no way questioned."

5. Representative Keogh and Senator Donnell also advanced the view that the bill had not included controversial changes where these could be avoided. Hearings before Subcommittee No. 1 of the Committee in the Judiciary in H.R. 1600 and H.R. 2055, 80th Cong., 1st Sess. 6 (1947); 94 Cong.Rec. 7928 (1948). Moreover, the House Committee Report states that § 1391 makes only "minor changes" in existing law. H.R.Rep.No. 308, 80th Cong., 1st Sess. (1947).

manded substantially unanimous approval.[6]

We find no sufficient countervailing force in plaintiff's other arguments. It urges that its reading would broaden a corporation's choice of venue under the 1962 statute relating to actions against federal officers, employees, or agencies, 28 U.S.C. § 1391(e), and thus help to deal with the problem encountered in Abbott Laboratories, Inc. v. Gardner, 387 U.S. 136, 156–157, 87 S.Ct. 1507, 18 L.Ed.2d 681 n. 20 (1967). However, we see no reason to suppose that Congress did not consider that the four venue choices afforded under § 1391(e) would suffice even though a plaintiff corporation remained a "resident" of only the chartering state.[7] Moreover, plaintiff's reading would broaden a corporation's choice of venue under the Federal Tort Claims Act, 28 U.S.C. § 1402(b), to a degree we cannot believe Congress would have desired. It would likewise greatly broaden a plaintiff's venue choice under 28 U.S.C. § 1398, which provides for review of ICC orders in the district "wherein is the residence or principal office of any of the parties bringing such action." We do not mean to suggest that Congress thought about all these matters when it adopted § 1391(c); rather the fact that such matters would require thought reinforces the conclusion that the 1948 revision left the residence of a corporate plaintiff where it had always been.

The judgment dismissing the complaint for improper venue is affirmed.

---

6. The case for doing this is even poorer now that a corporate plaintiff can sue in any district where the cause of action arose, regardless of the defendant's residence. The American Law Institute's proposals do not make the plaintiff's residence a basis for venue in general diversity or federal question jurisdiction. ALI, Study of the Division of Jurisdiction between State and Federal Courts, §§ 1303 and 1314 (1969).

7. The problem that arose in Abbott Laboratories could be solved quite simply by changing "the plaintiff" in § 1391(e) (4) to "a plaintiff." Another course is a special definition of the residence of corporate plaintiffs for actions against the United States or federal officers similar to that recommended by the ALI for corporate defendants in general diversity and federal question cases. See Study of Division, supra, § 1326(b). The definition is considerably narrower than the first clause of § 1391(c).