**PI, INC., Plaintiff,**

**v.**

**VALCOUR IMPRINTED PAPERS, INC., Frederick H. Collins and Jiffy Manufacturing Company, Inc., Defendants.**

**No. 78 Civ. 3590.**

United States District Court,
S. D. New York.

Feb. 27, 1979.

 

Burns, Jackson, Miller, Summit & Jacoby, New York City, for plaintiff; Ruth Balen, New York City, of counsel.

Burns, Van Kirk, Greene & Kafer, New York City, for defendants Valcour Imprinted Papers, Inc. and Frederick H. Collins; DiFabio & Couch, P. C., Albany, N. Y., of counsel.

Lilly, Sullivan & Purcell, P. C., New York City, for defendant Jiffy Manufacturing Co., Inc.; Little, Hall & Steinmann, P. A., Baltimore, Md., of counsel.

LASKER, District Judge.

From May, 1969 through February, 1975 Frederick Collins was employed by PI, Inc., a Massachusetts corporation that manufactures and sells polyethylene foam. As a condition of his employment, Collins promised not to disclose at any time any confidential information obtained in the course of his employment, and not to compete with PI, directly or indirectly, for three years after the termination of his employment.

In 1973 PI developed a secret method for extruding polyethylene foam that was lighter than the foam then available from other producers. In 1975 Collins left PI and took a job with Valcour Imprinted Papers, Inc. Shortly thereafter, Valcour began to produce low density polyethylene foam, and entered negotiations with Jiffy Manufacturing Company to form a joint venture, called Jifcour, to produce more foam. In 1977, Jiffy began to produce low density foam, and later that year Jifcour was formed.

PI charges that Collins disclosed PI's trade secret to Valcour and Jiffy, and that Valcour and Jiffy induced him to do so, thereby misappropriating the secret; that Collins breached his contract not to compete and that Valcour and Jiffy induced him to do so; and that these actions of Valcour, Jiffy, and Collins "constitute a grossly unfair method of competition by theft, conspiracy, breach of confidence, and fraud." Complaint ¶ 41.

Jiffy moves to dismiss the action against it for lack of personal jurisdiction over it, and both Jiffy and Valcour move to dismiss for improper venue, or to transfer the case to the Northern District of New York. Following discovery limited to the questions of jurisdiction and venue, the defendants' motions are denied.

### Jurisdiction over Jiffy

Under N.Y.Civ.Prac.Law § 302(a), jurisdiction exists over non-domiciliaries in cases alleging causes of action arising out of business transacted or "tortious acts" committed in New York. Beyond question Jiffy has transacted business in New York.[1] The question is whether PI's claims against Jiffy arose out of transactions here.

■ PI contends that Jiffy illegally induced Collins to breach his agreement with PI by disclosing to Jiffy PI's secret technology for extruding low density polyethylene foam, and by competing with PI through his employment with and financial partici-

pation in Jifcour. Almost every contact that Collins had with Jiffy was in New York.[2] Representatives of Jiffy met with Collins several times in Glens Falls, New York,[3] and communicated with him there by telephone and letter.[4] In addition, representatives of Jiffy and Valcour met seventeen times in New York between August, 1975 and December, 1977 to negotiate the formation of Jifcour and discuss business and marketing plans.[5] *See Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 956 (2d Cir. 1967). Whether these activities are characterized as "transaction of business" in New York or "tortious acts" committed in New York is immaterial: If Jiffy did induce Collins to breach his agreement, it must have done so in New York. PI's claims against Jiffy arise out of Jiffy's activities in New York, and jurisdiction is thus established.

### Venue[6]

Thus, there could be neither breach nor inducement to breach in the Southern District. PI argues, however, that it has suffered injury in this district as a result of the defendants' misappropriation of its trade secret, and that some of the negotiations relating to the formation of Jifcour took place here, and thus that its claim "arises" here.

Under § 1391, venue is proper only "in a district where a substantial part of the claim arose." *Transamerica Corp. v. Transfer Planning, Inc.,* 419 F.Supp. 1261, 1263 (S.D.N.Y. 1976); *accord, Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889–90 (S.D. N.Y.1974). The question, then, is not simply whether PI was injured in the Southern District of New York, but whether "a substantial part" of PI's claim arose here.

Valcour and Jiffy's sales of low density polyethylene foam in the Southern District are minimal, well under one percent of their gross national sales of foam, amounting to $1,443.94 and $594.92 respectively in 1977 and 1978 combined. Attorney's Affidavit in Support of Motion for Dismissal for Lack of Jurisdiction and for Improper Venue of Jiffy Manufacturing Co., Exhibit C, Affidavit of C. Frederick Johnson, at 2; Motion to Dismiss Complaint for Improper Venue or to Transfer Action, Exhibit A, Affidavit of Frederick T. Ducey, at 3; PI's Supplemental Affidavit, Exhibit B, Jiffy's Additional Answers, Exhibit D; *id.,* Exhibit D, Valcour's Answers to Interrogatories, at 3. PI asserts, however, that it has been injured in this district

---

1. See pp. 1220–1221, 1221 n. 10, 1222, *infra.*

2. The only exceptions are several trips by Collins to Jiffy's plant in Hanover, Pennsylvania, "to discuss various technical problems in regard to the operation of the plant." PI's Supplemental Affidavit in Further Opposition to Defendants' Motions to Dismiss for Lack of Jurisdiction and Improper Venue (hereinafter PI's Supplemental Affidavit), Exhibit B, Additional Answers of Jiffy Manufacturing Co. to Certain Interrogatories (hereinafter Jiffy's Additional Answers), Exhibit C.

3. *Id.,* Exhibit B app. A; *id.* Exhibit G, Collins' Answers to Interrogatories, at 2.

4. *Id.,* Exhibit A, Answers of Jiffy Manufacturing Co. to Certain Interrogatories (hereinafter Jiffy's Answers), at 6; *id.,* Exhibit B, Jiffy's Additional Answers, Exhibit B & app. C; *id.,* Exhibit G, Collins' Answers to Interrogatories, at 2.

5. *Id.,* Exhibit B, Jiffy's Additional Answers, Exhibit C; *id.,* Exhibit F, Valcour's Answers to Interrogatories, at 3–5.

6. PI contends that venue in this action is properly laid in the Southern District of New York as a district "in which the claim arose." 28 U.S.C. § 1391(a). Although almost all Collins' contacts with Jiffy were in New York state, none of his contacts with either Jiffy or Valcour was in the Southern District of New York.

PI suggests[7] that venue is proper in the Southern District of New York under 28 U.S.C. § 1392(a), which provides that

"[a]ny civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts."

Collins is a resident of the Northern District of New York, and Valcour, a New York corporation, is a resident of every district of the state of its incorporation.[8] PI contends that Jiffy's activities in the Southern District amount to "doing business" here within the meaning of 28 U.S.C. § 1391(c),[9] and consequently that Jiffy is a resident of the district "for venue purposes." Thus, according to PI, all the defendants "reside in different districts in the same State," and venue is proper in the Southern District, where some of the defendants reside. *Vance Trucking Co. v. Canal Insurance Co.,* 338 F.2d 943, 944 (4th Cir. 1964); *Kirkland v. New York State Department of Correctional Services,* 358 F.Supp. 1349, 1350 (S.D.N.Y.1973); *De George v. Mandata Poultry Co.,* 196 F.Supp. 192, 195 (E.D.Pa.1961).

The question whether Jiffy is "doing business" in the Southern District of New York within the meaning of 28 U.S.C. § 1391(c) is distinct from any jurisdictional question.[10] "What constitutes 'doing business' for purposes of venue is governed by

---

not because it has lost sales, but because it has had to reduce its prices to prevent its customers in the Southern District from switching to foam supplied by Valcour and Jiffy. PI has only five customers for foam in the district. Attorney's Affidavit in Opposition to Motion to Dismiss for Lack of Personal Jurisdiction, Exhibit B, Affidavit of King Foster, at 2. In 1977, its sales to them totaled approximately $225,000. *Id.* Jiffy has approached at least four of these customers, but has made no sales to them. See PI's Supplemental Affidavit, Exhibit C, Jiffy's Supplemental Answers, Exhibit A & Schedule B at 1, Schedule D at 1. In one instance, PI reduced its prices in order to retain a customer. Attorney's Affidavit in Opposition to Motion to Dismiss for Lack of Personal Jurisdiction, Exhibit B, Affidavit of King Foster; *id.,* Exhibit C, Affidavit of Phillip Scherl. Notably lacking from the record, however, is any evidence from PI's own books regarding lost revenues on sales to customers in the Southern District of New York.

Other than injury to PI, the only contacts between the alleged misappropriation and the Southern District were nine meetings between representatives of Jiffy and Valcour in the Manhattan area, relating to the formation of Jiffy and business and marketing plans. (Collins was not present at any of them.) PI's Supplemental Affidavit, Exhibit F, Valcour's Answers to Interrogatories, at 3–5. Similar meetings were held within New York but outside the Southern District, *id.*; it is unclear how many other meetings (if any) were held outside the state. Moreover, the connection between meetings relating to the exploitation of a misappropriated trade secret through the formation of a joint venture, and the actual misappropriation, out of which PI's claims arise, is an attenuated one. Despite the discovery had on this issue, it is difficult to ascertain, on the present record, how substantial a part of PI's claim arose here.

7. The suggestion appears in a footnote to PI's brief. Supplemental Memorandum in Further Opposition to Defendants' Motions to Dismiss for Lack of Jurisdiction and Improper Venue at 11 n.*.

8. *Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 320–24 (5th Cir. 1977); *Baksay v. Rensellear Polytech Institute,* 281 F.Supp. 1007, 1009 (S.D.N.Y.1968); *see Forbo-Giubiasco, S.A. v. Congoleum Corp.,* 463 F.Supp. 1243, 1244–1245 (S.D.N.Y.1979); *contra, Westerman v. Grow,* 198 F.Supp. 307, 308 (S.D.N.Y.1961); *Sawyer v. Soaring Society of America, Inc.,* 180 F.Supp. 209, 213 (S.D.N.Y.1960); *see Joscar Co. v. Consolidated Sun Ray, Inc.,* 212 F.Supp. 634, 638 (E.D.N.Y.1963).

9. 28 U.S.C. § 1391(c) provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The Second Circuit has held that section 1391(c) defines residence for corporate defendants only—a corporate plaintiff is a resident for venue purposes only of the state of incorporation. *Manchester Modes, Inc. v. Schuman,* 426 F.2d 629, 632–33 (2d Cir. 1970) (Friendly, J.)

10. Jiffy conducts its business from its home office in New Jersey and plants in New Jersey, Pennsylvania and North Carolina, PI's Supplemental Affidavit, Exhibit B, Jiffy's Additional Answers, Exhibit A. In 1977 and 1978 it delivered products worth $4,960,400. to 94 customers in the State of New York, *Id.,* Exhibit A, Jiffy's Answers, at 2, 3, and its officers and employees traveled to New York on more than 75 occasions to consult with customers, representatives of paper companies, and special counsel. *Id.,* at 4–5, Schedule A. Arguably Jiffy is "doing business" within the state and

federal law, even though, in a diversity case, it is state law which determines whether a corporation is 'doing business' in the state for purposes of jurisdiction." *Control Data Corp. v. Carolina Power & Light Co.,* 274 F.Supp. 336, 340 (S.D.N.Y. 1967); *accord, Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889–90 (S.D.N.Y.1974). Moreover, venue is geared to federal districts, whereas jurisdiction is geared to states, and consequently the inquiry involved in determining residence for purposes of venue necessarily has a different focus from that involved in determining residence for purposes of jurisdiction.

█ The "underlying rationale of the venue statutes . . . [is] to protect defendants from the inconvenience of defending actions in areas remote from their residences or, in the case of corporations, where they have significant activities." *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. at 889. In the present case it is clear that Jiffy engages in "significant activities" in the Southern District of New York, and would not be substantially inconvenienced by suit here. Jiffy delivered products worth $1,614,900. to customers in the Southern District in 1977 and 1978,[11] and its officers and employees made some sixty business trips to the Southern District during those years.[12] In addition, Jiffy has solicited purchases of its low density polyethylene foam in this district through its attendance at a trade fair here in September 1977 [13] and in visits to some fifty poten-

tial customers in 1977 and 1978.[14] Jiffy lists the phone numbers of its New Jersey head office and its New Jersey plant in the New York City telephone directory.[15] Finally, Jiffy representatives met with Valcour representatives in the New York City area on nine occasions to discuss business and marketing plans and negotiate the formation of Jifcour.[16] In sum, Jiffy's "presence" in the Southern District of New York is sufficiently palpable that Jiffy must be deemed to be "doing business" here within the meaning of 28 U.S.C. § 1391(c), and therefore a resident of this district for venue purposes.

█ There remains one possible objection to PI's claim (under 28 U.S.C. § 1392(a)) that venue here is proper. It has been argued that the purpose of this provision is to relieve plaintiffs of the burden of bringing multiple suits against defendants who reside in different districts in the same state, and therefore that venue under section 1392(a) should be available only when there is no district in which the defendants can be sued under section 1391. This argument has been rejected where the only district in which the defendants can be sued is that in which the claim arose, an alternate which will always be available. *Kirkland v. New York State Department of Correctional Services,* 358 F.Supp. 1349, 1350 (S.D.N.Y.1973). The question left open in *Kirkland* is whether venue is proper under section 1392(a) in any district in which one of the defendants resides, when venue in an-

therefore subject to jurisdiction under N.Y.Civ. Prac.Law § 301. *See Delagi v. Volkswagenwerk AG,* 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972); *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); *Miller v. Surf Properties,* 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958); *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915 (1917). Even if it were, however, that would not establish that it is "doing business" in the Southern District of New York for venue purposes.

11. PI's Supplemental Affidavit, Exhibit A, Jiffy's Answers, at 2–3.

12. *Id.,* Schedule A.

13. Attorney's Affidavit in Opposition to Motion to Dismiss for Lack of Personal Jurisdiction,

Exhibit B, Affidavit of King Foster, at 2; *id.* Exhibit C, Affidavit of Phillip Scherl.

14. PI's Supplemental Affidavit, Exhibit C, Supplemental Answers of Jiffy Manufacturing Co. to Interrogatory 11(c) (hereinafter Jiffy's Supplemental Answer), Exhibit A, Schedules B, C, D, E.

15. *Id.,* Exhibit A, Jiffy's Answers, at 5.

16. *Id.,* Exhibit B, Jiffy's Additional Answers, Exhibit C; *id.,* Exhibit F, Valcour's Answers to Interrogatories, at 3–5. Although these meetings have only an indirect connection to PI's claim of misappropriation, *see* note 6 *supra,* they are directly relevant to the question whether Jiffy is "doing business" in the Southern District of New York.

other district in the same state is proper (under section 1391) because *all* defendants reside there. The answer appears to be that Congress used "absolutely unambiguous language" in section 1392(a), *id.*, language which contains not the slightest hint that venue under that section is available only when there is no one district in which all defendants reside. There is no reason not to construe section 1392(a) to mean what it says. Accordingly, venue in this case is properly laid in the Southern District of New York. *See* 1 J. Moore, Federal Practice ¶ 0.143[1] at 1455 (1974); *De George v. Mandata Poultry Co.,* 196 F.Supp. 192 (E.D.Pa.1961).

*Motion to Transfer*

■ The defendants move to transfer this action to the Northern District of New York on the grounds that trial there would be more convenient for the parties and witnesses, and in the interest of justice. 28 U.S.C. § 1404(a). The defendants bear the burden of showing that trial in the Northern District would be substantially more convenient than trial here. *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.), *cert. denied,* 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967) (Weinfeld, J.); *see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The defendants' burden is not appreciably diminished in the present case simply because PI is not suing in its home forum, since the Southern District of New York and the State of New York are related to the controversy. *Pesin v. Goldman, Sachs & Co.,* 397 F.Supp. 392, 394 (S.D.N.Y.1975); *Allied International Products Ltd. v. Textron Industries, Inc.,* 382 F.Supp. 210, 213 (S.D.N.Y.1974); *Rodgers v. Northwest Airlines, Inc.,* 202 F.Supp. 309, 312 (S.D.N.Y.1962). In this case, the defendants have not carried their burden.

■ Although Valcour has offered to do so, none of the parties has apprised the court of the witnesses it intends to call or their locations. However, it is reasonable to presume that testimony will come principally from Collins and officers and employees of the corporate parties. Collins and Valcour are located in the Northern District of New York. This would be a more convenient forum for them and for Valcour's officers and employees. Jiffy is located in New Jersey. Though it joins in the motion to transfer to the Northern District, it relies solely on the relative convenience of that forum to Valcour, and has made no attempt to refute the natural inference that trial in Manhattan would be more convenient for it and its officers and employees than trial in Albany. PI is located in Massachusetts. Transportation from there to the Southern District is more readily available,[17] and thus the Southern District is a more convenient forum for PI and its officers and employees. Nothing in the record seems sufficient to warrant depriving PI of its forum of choice.

\* \* \* \* \* \*

Jiffy's motion to dismiss the action for lack of personal jurisdiction is denied. The defendants' motions to dismiss for improper venue or to transfer to the Northern District of New York are also denied.

It is so ordered.

---

17. *See* Plaintiff's Memorandum In Opposition to the Motion of Defendant Valcour Imprinted Papers, Inc. and Jiffy Manufacturing Co., Inc. for Dismissal or Change of Venue at 15.