ARROW TRADING CO., INC., Plaintiff,

v.

SANYEI CORPORATION (HONG KONG), LTD., Defendant.

No. 81 Civ. 1746 (CBM).

United States District Court, S.D. New York.

June 8, 1983.

Buchman, Buchman & O'Brien by Daniel Cohen, New York City, for plaintiff.

Baden, Kramer & Huffman by Wayne I. Baden, Douglas Kramer, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, Chief Judge.

This action is before the court upon defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff contends that this court has personal jurisdiction over defendant pursuant to Federal Rule of Appellate Procedure 4(a)(1) and New York Civil Practice Law sections 301 and 302(a)(1). An evidentiary hearing was held on December 13, 1982 through December 15, 1982. The following are the court's findings of fact and conclusions of law.

*Findings of Fact*

Arrow Trading Company, Inc. (Arrow), is a New York corporation with its principal place of business in the City of New York. It is engaged in the business of importing and marketing general merchandise. Defendant Sanyei Corporation (Hong Kong), Ltd. is a trading company incorporated in Hong Kong with its only offices in Hong Kong. Defendant is a partially-owned subsidiary of Sanyei Corporation, a Japanese trading corporation which is not a party to this action. Sanyei Corporation is also the parent corporation of Sanyei New York, a wholly-owned subsidiary with offices in the City of New York.

Early in 1978, Benjamin Dweck, the president of Arrow, visited defendant's offices in Hong Kong and dropped off a flashlight, requesting that defendant locate a manufacturer to replicate the flashlight. Thereafter, the parties entered into negotiations by mail and telex. Among the details negotiated were Arrow's requirement that it be granted exclusive rights to the mold used to manufacture the flashlights, and that the cost of the mold be absorbed by the manufacturer. On May 24, 1978, Arrow sent S.H.K. a purchase order for 100,000 of the flashlights, subject to approval of a sample to be forwarded by S.H.K. S.H.K. guaranteed delivery but not quality. On May 25, 1978, Arrow instructed S.H.K. to proceed with production if S.H.K. had selected a manufacturer that it trusted.

On June 7, 1978, S.H.K. confirmed receipt of Arrow's purchase order via a "Confirmation Note" which stated, *inter alia,* "we confirm having booked the following order for your account as per the particulars and terms stated below .... mold charges and cost will be assumed and paid by the maker."

Arrow subsequently ordered an additional 150,000 flashlights by telex. It thereafter opened two irrevocable letters of credit dated June 14, 1978 and December 21, 1978, in the amounts of $80,000 and $142,000 respectively. Each letter of credit called for documentation which included a "Special Customs Invoice showing a complete breakdown of cost including ex-factory cost."

Upon receipt of the initial shipment, Arrow was dissatisfied with the quality of the flashlights. Consequently, in February of 1979, Arrow's vice president and one of Arrow's customers, both in Hong Kong on business, visited the S.H.K. offices regarding the defects in the flashlights. Defendant's division head for the product took them to the factory where they discussed with the maker the corrective measures to be taken. Thereafter, telexes were exchanged regarding the matter. An officer of defendant's sister corporation, Sanyei New York, was sent to inspect the defective flashlights stored in plaintiff's New York warehouse. The representative of Sanyei New York relayed the information he received to defendant in Hong Kong.

In May of 1979, Arrow's vice president again visited defendant in Hong Kong. The following month defendant's vice president visited New York and inspected the flashlights. Ultimately, in January of 1980, Arrow and defendant met again with the manufacturer in Hong Kong and reached a tentative solution. Defendant then telexed Arrow that Arrow's buyer had settled the claim. On March 17, 1980, Arrow's attorneys sent a letter of claim to defendant. Defendant responded that Arrow's claim should properly be directed to the manufacturer but that a "complete understanding and settlement has already been reached amongst Arrow Trading, Hong Kong Sanyei and the manufacturer ...." In April of 1980, Arrow and its attorney met with defendant's vice president and an attorney at the offices of Sanyei New York. No settlement was reached. The instant action was filed in March of 1981.

*Conclusions of Law*

■ In this diversity action, the issue of personal jurisdiction must be determined in accordance with New York state law. *Arrowsmith v. UPI*, 320 F.2d 219 (2d Cir. 1963). Plaintiff asserts that jurisdiction herein is proper pursuant to New York's traditional "doing business" test, *see* Civ. Prac.L. § 301 (McKinney 1972), and pursuant to the 'New York long-arm statute, Civ.Prac.L. § 302(a)(1) (McKinney Supp. 1982).

### I.

Under New York's traditional "doing business" test, the courts of New York are authorized to exercise jurisdiction over a foreign corporation only upon a finding that the corporation is " 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.' " *McGowan v. Smith*, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981) *quoting Simonson v. International Bank*, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964).

The test, though not "precise" ..., is a "simple pragmatic one" ...: is the aggregate of the corporation's activities in the State such that it may be said to be "present" in the State "not occasionally or casually, but with a fair measure of permanence and continuity" ... and is the quality and nature of the corporation's contacts with the State sufficient to make it reasonable and just ... that it be required to defend the action here ....

*Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 458 (1982) (citations omitted).

■ Defendant's visits to New York cannot be said to meet New York's test of permanence and continuity. *See Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917). Further, under New York law defendant must be shown to have been "doing business" in New York when the action was commenced. *Top Form Mills v. Sociedad Nationale Ind., etc.*, 428 F.Supp. 1237, 1246 n. 12 (S.D.N.Y.1977); *Propulsion Systems v. Avondale Shipyards, Inc.*, 77 Misc.2d 259, 352 N.Y.S.2d 749, 751 (S.Ct.1973). This action was commenced in March of 1981. In 1981, each of four representatives of S.H.K. visited New York once, for visits totalling 26 days. Defendant characterizes these visits as social visits, which were apparently intended to maintain good will between S.H.K. and its clients across the globe. While the parties dispute whether defendant's representatives solicited business during their visits, it is clear that solicitation alone does not constitute "doing business" in this state. *See Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536, 227 N.E.2d 851, 852–53, 281 N.Y.S.2d 41, 43 (1967); *Miller v. Surf Property, Inc.*, 4 N.Y.2d 475, 151 N.E.2d 874, 176 N.Y.S.2d 318 (1958); *Elish v. St. Louis South Western Ry. Co.*, 305 N.Y. 267, 112 N.E.2d 842 (1953). *But see* N.Y. Civ.Prac.L. § 301 supplementary practice commentary C301:2 (McKinney Supp.1982) ("It is likely that the days of the mere solicitation rule are numbered and that in due course a record of systematic and ex-

tensive solicitation of business will, in and of itself, support jurisdiction . . . .").

■ Nevertheless, plaintiff asserts that defendant was doing business in New York both through its own personnel and through its "agent", Sanyei New York.[1]

The record herein indicates that Sanyei New York, in addition to performing sales on its own behalf, provides liaison services for S.H.K. and other foreign corporations. For these services it is paid a fee. Primarily, Sanyei New York's role as a liaison is comprised of relaying information by telex, booking car and hotel reservations for visiting representatives, and sending and accepting samples on behalf of foreign representatives. It does not solicit sales, accept orders or make decisions on behalf of other corporations. In fact, of the two dozen odd services plaintiff claims Sanyei New York performed on behalf of defendant, few if any can be said to require the use of discretion or exercise of judgment. *See Miller v. Surf Properties*, 176 N.Y.S.2d at 322, 151 N.E.2d at 877. The court finds that Sanyei New York's activities on behalf of defendant are primarily ministerial, and that Sanyei New York does not do "all the business which [defendant] could do were it here by its own officials." *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d at 537, 227 N.E.2d at 854, 281 N.Y.S.2d at 44.

Accordingly, the court concludes that defendant was not "doing business" in New York at the time this action was commenced and is not, therefore, subject to jurisdiction pursuant to N.Y.Civ.Prac.L. § 301.

## II.

Plaintiff asserts that jurisdiction over defendant is proper under the subsection of New York's long-arm statute which reads, in pertinent part, as follows:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who, in person or through an agent:

1) transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

N.Y.Civ.Prac.L. § 302(a)(1) (McKinney Supp.1982). Pursuant to this provision, defendant would be subject to personal jurisdiction in New York if (a) plaintiff's cause of action arose out of business transacted in New York by defendant, or (b) plaintiff's cause of action arose out of a contract with defendant whereby defendant was to supply goods or services in New York.

■ Under the "transaction of business" provision of the long-arm statute, jurisdiction may be exercised over non-resident defendants who have engaged in purposeful activity in New York, invoking the benefit and protections of state law. *See Longines-Wittnauer Co. v. Barnes Reinecke*, 15 N.Y.2d 443, 458, 209 N.E.2d 68, 76, 261 N.Y.S.2d 8, 19 (1965). Defendant herein came to New York in connection with the Arrow transaction on two occasions—once in 1979 to inspect the merchandise which plaintiff claimed was defective, and once in 1980 to attempt settlement of the instant dispute. Plaintiff's claim clearly did not *arise* out of either of those contacts with New York. As to the underlying agreement between the parties, it

---

**1.** Plaintiff would also have the court assert jurisdiction over defendant by virtue of the existence of its sister subsidiary in New York. The court does not find the facts alleged herein to justify a double piercing of the corporate veil. Defendant's representatives make infrequent brief trips to New York, and it appears that while here they are allowed to use a desk and telephone at Sanyei New York if the need arises. In the same vein, Sanyei New York made space available for settlement discussions between plaintiff and defendant. Clearly, the extension of such courtesies does not render Sanyei New York a mere arm of defendant. Further, the court notes that plaintiff's citation of cases wherein jurisdiction over a *parent* corporation was found by virtue of the presence of a subsidiary in New York are factually distinctive from the circumstances here present. Even if plaintiff were to establish that Sanyei New York's activities would render Sanyei Corporation amenable to suit in New York, it would only have established a jurisdictional basis for a suit against the parent corporation, which is not a party to this action.

should be noted that it was plaintiff who approached defendant in Hong Kong, initiating the transaction. Negotiations were conducted by mail and telex between New York and Hong Kong. Defendant's performance of the agreement was to take place in Hong Kong. Indeed, the only significant contact this matter has with New York is that plaintiff is a New York corporation. It cannot be said that defendant purposefully availed itself of the protection of New York's laws.

Plaintiff further contends that defendant is amenable to suit in New York by virtue of a contract to "supply goods or services in the state." However, the court finds that defendant was not a seller or supplier of goods but a buying agent for plaintiff. *See J.C. Penney Purchasing Corp. v. United States*, 451 F.Supp. 973, 983–84 (Cust.Ct.1978). In this regard, plaintiff's reliance on *West Mountain v. Seasons of Leisure*, 82 A.D.2d 931, 440 N.Y.S.2d 729 (3d Dep't 1981), and similar cases is misplaced. In *West Mountain*, the Appellate Division found that long-arm jurisdiction was available as against Como Specialties, Inc., a Minnesota corporation which had subcontracted to supply the materials for an amusement park slide to be built in New York. There is no indication that a buying agency was in any way involved in that action. Rather, it appears that Como Specialties was the manufacturer and supplier of goods which it had contracted to send to New York for use here.[2]

Here, plaintiff went to Hong Kong and requested that defendant locate a manufacturer for the goods in question. Defendant acted as a buying agent on plaintiff's behalf. "As far as the manufacturer was concerned, his responsibility for the merchandise ended when he left the goods at [the buying agent's] warehouse. At that time, [plaintiff] owned the goods because [the buying agent] had a letter of credit for the goods and purchased them for [plaintiff] as its agent." *J.C. Penney Purchasing Corp. v. United States*, 451 F.Supp. at

982. Thus, the "supplier" of goods in this instance was plaintiff, not defendant.

The court concludes that it does not have personal jurisdiction over defendant. Defendant is not doing business in New York, has not transacted business in New York from which the cause of action herein arose, and did not contract to provide goods or services in New York. Accordingly, defendant is not amenable to suit in this forum. Defendant's motion to dismiss is granted.

---

**2.** Como Specialties did not, however, contract through a buying agent. Rather, it contracted to sell materials to the contractor that had been hired to build the New York park.