MARYLAND TUNA CORPORATION,
Plaintiff-Appellant,

v.

The MS BENARES, her engines, boilers, etc.,

Nichimen Co., Inc., Skibs A/S Excelsior, Bendt Rasmussen and Rederi A. B. Salenia, Interocean Shipping Corporation, Stockholm, Defendants,
and

Nichimen Co., Ltd., Tokyo, Defendant-Appellee.

MARYLAND TUNA CORPORATION,
Plaintiff-Appellant,

v.

NICHIMEN CO., Inc., Defendant,
and

Nichimen Co., Ltd., Tokyo, Defendant-Appellee.

MARYLAND TUNA CORPORATION,
Plaintiff-Appellant,

v.

NICHIMEN CO., Ltd., TOKYO,
Defendant-Appellee.

Nos. 421, 422 and 427,
Dockets 31141, 31142 and 34245.

United States Court of Appeals,
Second Circuit.

Argued Jan. 13, 1970.

Decided June 2, 1970.

William Warner, New York City (Symmers, Fish & Warner, New York City, on the brief), for plaintiff-appellant.

John S. Rogers, New York City (Herbert M. Lord and Burlingham, Underwood, Wright, White & Lord, New York City, on the brief), for defendant-appellee and garnishee Nichimen Co., Inc.

Before MEDINA, WATERMAN and SMITH, Circuit Judges.

MEDINA, Circuit Judge:

Maryland Tuna Corporation appeals from orders of the District Court for the Southern District of New York which had the combined effect of declaring that the District Court could not exercise *in personam* jurisdiction over Nichimen Co., Ltd., Tokoyo, a Japanese corporation, either by reason of the activities it conducted with Nichimen Co., Inc., a New York corporation with an office in the Southern District of New York or by the attachment of the property of the Japanese corporation held by, or debts to the Japanese corporation owed by, Nichimen Co., Inc.

The appeal in No. 31141 (Case I) is from an order entered December 30, 1966 denying reargument and/or resettlement of a judgment dated November 23, 1966 which quashed service and dismissed the complaint against Nichimen

Co., Ltd., Tokyo in a libel in admiralty. The appeal in No. 31142 (Case II) is from an order entered December 30, 1966 denying reargument and/or resettlement of a judgment of November 23, 1966 which quashed service and dismissed the complaint against Nichimen Co., Ltd., Tokyo in a civil action at law for damages. The appeal in No. 34245 (Case III) is from an order of October 6, 1969 denying a motion by Maryland Tuna to require Nichimen Co., Inc. to deposit certificates of its stock into the registry of the District Court. For the reasons detailed below, Case I and Case II are reversed and remanded for further proceedings not inconsistent with this opinion. The appeal in Case III is dismissed.

### Preliminary Comment

Because of the extraordinarily confusing and muddled record before us on these three interrelated appeals, our task of delineating and disposing of the simple legal issues involved has been made unnecessarily arduous. We hope to bring some order out of this confusion by a brief chronological resume of the numerous proceedings involved in the three separate appeals. It is well to bear in mind from the outset that the chief source of controversy is the relationship between Nichimen Co., Inc., a New York corporation, and Nichimen Co., Ltd., Tokyo, a Japanese corporation. We shall refer to these corporations as Nichimen New York and Nichimen Tokyo. Counsel for Nichimen Tokyo seem to think the relationship between the Japanese corporation and the New York corporation is, on the face of the record before us, perfectly clear. This is far from being the case, however, as will appear in the discussion of the law points later on in this opinion. It will suffice to say now, for the purpose of clarity, that in our opinion the little that appears in the record before us merely scratches the surface. One of the reasons for our remand is to afford an opportunity to probe beneath the surface and ascertain precisely what was the relationship between these

two corporations at the time of the attempted service of process on Nichimen Tokyo.

The cases themselves arise from the claim of Maryland Tuna for damages in the amount of $46,311.05 for the contamination of a cargo of tuna in bulk shipped aboard the MS Benares from Port Louis, Mauritius Island to Cambridge, Maryland. The legal issues arise from the attempt of Maryland Tuna to obtain personal jurisdiction over the Japanese corporation by service of process on the New York corporation as its agent and the complete frustration of the efforts of Maryland Tuna to carry to a successful conclusion its Process of Maritime Attachment and Garnishment. It appears without dispute that all the shares of stock of the New York corporation were held in the names of its three officers and directors, all of whom were in New York at the time the process of attachment and garnishment was served on the New York corporation, and the evidence in the record would seem to support the conclusion that these individuals, by virtue of their office as officers and directors, held this stock not in their own right, but to serve some purpose or design of Nichimen Tokyo that is still obscure.

Two weeks after Judge Levet filed an opinion in which he concluded that the service of process against the Japanese corporation should be quashed because the corporation was not sufficiently present in the State of New York to afford a basis for personal jurisdiction, the certificates representing these shares of stock were sent to Japan for "safekeeping."

The equally important question, namely whether the legal or equitable interest of the Japanese corporation in the New York corporation, which would seem to be a lock, stock and barrel affair, was levied upon by service of the attachment papers on the New York corporation, was at first completely by-passed as the result of a judgment dismissing the libel and making no reference to the attach-

ment and garnishment proceedings that had occurred in the interval between the date of filing the opinion quashing service of process and the entry of the judgment dismissing the libel. This surprising result would seem to stem from the circumstance that after the Clerk issued on November 9, 1966 the regular Form No. 2, Process of Maritime Attachment and Garnishment, stated on its face to be "issued pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure," a *quasi in rem* proceeding, the Clerk, over the protest of counsel, also issued a summons to show cause, returnable on November 22, 1966, which is Form No. 3, applicable only to Supplemental Rule C(3) which has no application to the claim asserted in the libel but only to proceedings *in rem*.

It requires little argument to demonstrate that the as-yet-to-be-determined matter of the relationship between the two corporations is likely to be dispositive both of the question of the validity of the service of process on Nichimen Tokyo and also of the question of whether there was any interest of Nichimen Tokyo in Nichimen New York that was levied upon in the attachment and garnishment proceeding. We are at a loss to understand how this simple point got completely buried under a mass of procedural moves and counter-moves.

We reverse the orders appealed from in Cases I and II and remand the cases for further proceedings not inconsistent with this opinion to afford an opportunity fully to explore the true relationship between Nichimen New York and Nichimen Tokyo. It may eventually appear that the issuance of the stock certificates evidencing ownership of Nichimen New York to the three officers and directors and the return of the certificates to Japan for "safekeeping" were part of a scheme by those who controlled Nichimen Tokyo to transact a large and substantially non-profit business in New York and elsewhere without subjecting Nichimen Tokyo to personal jurisdiction of the courts functioning in New York or to taxation in the United States. A complete airing of the whole situation may well have the effect of sustaining the *quasi in rem* Process of Maritime Attachment and Garnishment under Supplemental Rule B(1), and it may also compel a reappraisal of the factors controlling a decision of the question of jurisdiction *in personam* as against Nichimen Tokyo.

The appeal in Case III is dismissed.

### Chronological Survey of Proceedings

Although the written contract of October 20, 1964 shows on its face that the agreement to purchase the tuna was made by Nichimen Tokyo, Maryland Tuna proceeded by libel in admiralty in the District Court for the Southern District of New York against the MS Benares, Nichimen New York and others on October 7, 1965, alleging negligence by Nichimen New York causing contamination of the tuna. On October 13, 1965 a civil action at law was brought against Nichimen New York and the complaint sought damages in the same amount as was stated in the libel, $46,311.05, based upon an alleged breach of the implied warranty of merchantability, a theory of recovery different from the one charged in the libel. There was, of course, no problem of personal jurisdiction because Nichimen New York was a New York corporation. The answer of Nichimen New York, however, revealed the fact that Nichimen New York was not the seller of the tuna and that its only function in the entire transaction was to act as a collection agent for Nichimen Tokyo in California under a letter of credit.[1]

---

1. The letter of credit was opened on November 3, 1964 in favor of Nichimen New York ostensibly as a convenience to Maryland Tuna and an accommodation to Nichimen Toyko, which did not have an office of its own in the United States.

In turn, a letter of credit was opened in favor of Nichimen Tokyo for the account of Nichimen New York through another bank. An invoice dated November 7, 1964 from Nichimen Tokyo was sent to Maryland Tuna. This was followed by

Maryland Tuna promptly amended its pleadings in the two cases and on March 17, 1966 joined Nichimen Tokyo as a defendant.

Significantly, Maryland Tuna, in its amended libel, added two new paragraphs to its prayer for relief, the only purpose of which was, we think, to comply with what was then General Admiralty Rule 2 (the predecessor to the present Rule B of the Supplemental Rules which took effect on July 1, 1966) which then required that the libel contain "a clause therein to attach his goods and chattels, or credits and effects in the hands of the garnishees named in the libel to the amount sued for, if said respondent shall not be found within the district." The two new clauses are:

> In case the respondent, Nichimen Co., Ltd., Tokyo, cannot be found within this district, then that all goods, chattels and credits belonging to it within this district, and in particular debts, credits and effects in the possession of Nichimen Co., Inc., may be attached by process of foreign attachment in the amount of $46,311.05, the sum sued for in this libel, with interest and costs and disbursements of the libelant.

> And that the said garnishee, Nichimen Co., Inc., be cited and admonished to appear and answer on oath as to the said effects, debts or credits of the respondent, Nichimen Co., Ltd., Tokyo, in its hands.

As Maryland Tuna claimed it had obtained personal jurisdiction over Nichimen Tokyo by service of process on Nichimen New York, it was obviously not possible then to file with the amended libel an affidavit to the effect that "the de-fendant cannot be found within the district." Moreover, such an affidavit was not required under General Admiralty Rule 2.

The response of Nichimen Tokyo was a special appearance and a motion to dismiss the libel and the civil action at law under Fed.R. Civ.P. 12(b) (2) and 12(b) (3) for lack of jurisdiction over the person and improper venue. The latter ground is not involved on this appeal. The motion to dismiss on the former ground was argued, on the basis of affidavits pro and con, before Judge Levet who concluded in a preliminary way, in an opinion filed on October 3, 1966, that there was no basis for the exercise of personal jurisdiction over Nichimen Tokyo, under the applicable New York law. He stated in the opinion, however, that he would withhold final determination of the question until a deposition of an officer of Nichimen New York could be taken and submitted to him. Accordingly, the deposition of the President of Nichimen New York was taken on October 10, 1966. We shall later refer to this testimony. The result was the filing of a Supplemental Opinion by Judge Levet on November 7, 1966, with findings of fact and conclusions of law to the effect that the nature of Nichimen Tokyo's activities in New York were not sufficient to support jurisdiction *in personam*. The opinion concluded: "The respondent is entitled to an order quashing service. * * * Settle order on notice." It now having been judicially decided that Nichimen Tokyo was not to be found in the district, Maryland Tuna acted promptly.

On November 9 Maryland Tuna's counsel filed the affidavit required by Supplemental Rule B(1) [2] to the effect that

---

an invoice dated November 14, 1964 from Nichimen New York which contained essentially the same data as the previous invoice. Payment from Maryland Tuna to Nichimen New York under the first letter of credit and then from Nichimen New York to Nichimen Tokyo under the second letter of credit was made during November, 1964. The contamination of the tuna was discovered when the MS Benares arrived at Cambridge, Maryland on December 14, 1964.

2. Supplemental Rule B(1):
   Rule B. Attachment and Garnishment: Special Provisions
   (1) When Available; *Complaint, Affidavit, and Process.* With respect to any admiralty or maritime claim in personam a verified complaint may con-

Nichimen Tokyo could not be found in the Southern District of New York. He also obtained on the same day from the Clerk Form No. 2, Process of Maritime Attachment and Garnishment, in all respects regular and in conformity with the requirements of Supplemental Rule B(1), directed against Nichimen New York as garnishee and requiring the attachment of "debts, credits and effects and any interest of Nichimen Co., Ltd. in Nichimen Co., Inc."

Also on November 9, 1966, and evidently immediately after issuing the regular and proper Form No. 2 pursuant to Rule B(1), the Clerk, we are told, insisted upon also issuing Form No. 3, "Summons to Show Cause Why Intangible Property Should Not Be Paid Into Court." This document should not have been issued and it is the document that is largely responsible for the confused and chaotic state of the record before us.

On November 14, 1966 the marshal served on the manager of Nichimen New York copies of the Form No. 2, "Process of Maritime Attachment and Garnishment," * * * "issued pursuant to Rule B(1) of the Supplemental Rules * * *," and of Form No. 3, "Summons to Show Cause Why Intangible Property Should Not Be Paid Into Court," * * * "issued pursuant to Rule C(3) [3] of the Supplemental Rules * * *." The sum-

mons to show cause was returnable at 10:00 A.M. on November 22, 1966 in Room 506 of the United States Courthouse. Nichimen New York did not respond to the Summons to Show Cause and its default was noted by the Clerk. On the same day, however, i. e., November 22, 1966, Nichimen New York "as garnishee" served an answer to the libel denying that it held "at the time of the service of process in this suit, or at any time since, any goods, chattels, effects, debts or credits in its hands or under its control, belonging to the said Nichimen Co., Ltd., Tokyo, or in which it has any interest."

On the next day, November 23, 1966, counsel for Nichimen Tokyo submitted orders, signed on that date by Judge Levet, not only quashing the service of process on Nichimen Tokyo, as was stated in Judge Levet's opinion filed on November 7, 1966, but also dismissing the libel and the civil action at law. On the basis of a reasoned appraisal of the limited facts before him a conclusion was admissible to the effect that service of process should be quashed. But why dismiss the libel? Judge Levet's opinion of November 7, 1966 made no reference to the dismissal of the libel, but only the quashing of the service of process. The effect of such dismissal was, of course, also to invalidate *sub silentio* the attach-

---

tain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district. When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment. In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e), invoke the remedies provided by state law for attachment and garnishment or similar seizure of the defendant's property. Except for Rule E(8) these Supplemental

Rules do not apply to state remedies so invoked.

3. Supplemental Rule C(3):
Rule C. Actions in Rem: Special Provisions
   *    *    *    *    *
(3) Process. Upon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action and deliver it to the marshal for service. If the property that is the subject of the action consists in whole or in part of freight, or the proceeds of property sold, or other intangible property, the clerk shall issue a summons directing any person having control of the funds to show cause why they should not be paid into court to abide the judgment.

ment and garnishment proceeding commenced after November 7, 1966 and prior to November 23, 1966, pursuant to Supplemental Rule B(1). As we find the Summons to Show Cause issued by the Clerk "pursuant to Rule C(3) of the Supplemental Rules," and applicable only to proceedings *in rem,* was erroneously issued and mere surplusage, subject to dismissal on motion at any time, because the amended libel stated no claim *in rem,* the attachment and garnishment proceeding pursuant to Rule B(1) was in all respects valid and viable and it should not have been dismissed, *sub silentio* or otherwise. We reverse and remand so that this attachment and garnishment proceeding may proceed to a conclusion according to the procedures of the admiralty practice. To prevent possible injustice, and because of the interrelationship of the issues involved in the appeals in Cases I and II, we also feel constrained to reverse and remand so much of the orders or judgments as grants the motions to quash.

Before the filing of the order of November 23, 1966 there seem to have been written certain most confusing communications, due perhaps to inadvertence of counsel for Maryland Tuna and perhaps to the failure of said counsel to understand the confusion that was bound to result from the simultaneous issuance by the Clerk of Form 2, "Process of Maritime Attachment and Garnishment * * * pursuant to Supplemental Rule B(1)," applicable to libels seeking recovery *in personam* and Form 3, "Summons to Show Cause Why Intangible Property Should Not Be Paid Into Court, * * * pursuant to Supplemental Rule C(3)," applicable only to proceedings *in rem.* The first of these written communications was the following letter of November 22, 1966 from counsel for Maryland Tuna to Judge Levet:

I am submitting counter-orders because the proposed orders submitted by Mr. Lord provide that the Admiralty and Civil actions against Nichimen Co., Ltd., Tokyo, be dismissed. The counter-orders provide that the service of process on Nichimen Co., Ltd., Tokyo, be vacated.

After the Court handed down its opinion of 7 November 1966, on 9 November 1966 process of maritime attachment and garnishment pursuant to Rule B(1) of the Supplemental Rules was issued by the Clerk and served by the United States Marshal on Nichimen Co., Inc., with a copy of the amended libel and a summons to show cause why intangible property should not be paid into Court, returnable today, 22 November 1966. At the call of the calendar, no one appeared on behalf of Nichimen and Judge Bonsal directed that an order be submitted. Although this letter did state that the order disposing of the challenge to *in personam* jurisdiction over Nichimen Tokyo should not dismiss the action but only vacate the service of process, no adequate statement of reasons is included and we can find no brief or memorandum stating these reasons in enough detail to make them plain to Judge Levet. Moreover, the reference to the Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B(1) is confused with the Summons to Show Cause, pursuant to Rule C(3). The reply of counsel for Nichimen Tokyo of November 23, although clear enough in the light of what we know now, was hardly more informative to Judge Levet.

If the reader has been following the dates and the sequence of events, he will recall that the Summons to Show Cause pursuant to Rule C(3), which should never have been issued and which has thoroughly bedevilled these cases, was returnable before Judge Bonsal in Room 506 of the United States Courthouse at 10 A.M. on November 22, 1966. Counsel for Nichimen Tokyo, who apparently knew perfectly well what was going on, made no appearance. Counsel for Maryland Tuna, who very decidedly did not know what was going on, had the supposed default of Nichimen Tokyo noted; and Judge Bonsal, who could not possibly have had any knowledge of the prior proceedings, said "Settle Order on Notice."

The two sets of lawyers submitted proposed orders to Judge Bonsal. The first was submitted by counsel for Maryland Tuna. It was dated November 23, 1966, the very date on which Judge Levet dismissed the libel and the civil action at law, and this proposed order was in the form commonly used in Rule C(3) proceedings directing payment into court of $46,311.05, or, in the event of an answer containing denials of the possession of property of Nichimen Tokyo, appointing a Commissioner to take evidence and report on the issues. The other proposed order, dated November 25, 1966, was submitted on behalf of "Respondent Nichimen Co., Inc."; and this proposed order recited that the action was not *in rem* and hence that Rule C(3) was not applicable, that it had served an answer in the Rule B(1) proceeding denying that it held any property of Nichimen Tokyo, that the case had been dismissed by Judge Levet on November 23 and concluded that the "Summons" pursuant to Rule C(3) be dismissed.

What happened, however, as was disclosed when we finally found these two proposed orders reposing in the files of the District Court and not in the files before us in Cases I, II and III,[4] is that on November 28, 1966 Judge Bonsal referred these two proposed orders to Judge Levet; and Judge Levet found them before him when he came to decide in late December the critical motion to reargue and/or resettle, i. e., to vacate the orders or judgments of November 23, 1966. As no one had evidently taken the trouble to explain to Judge Levet what had taken place between November 7, 1966 and November 23, 1966, it is not strange that he had the impression that these two proposed orders submitted to Judge Bonsal were supposed to represent the action the respective parties wished him to take in connection with his decision of the motion of Maryland Tuna to reargue and/or resettle, i. e., to vacate, his orders or judgments of November 23,

1966 quashing service on Nichimen Tokyo and dismissing the libel and the complaint in the civil action at law.

It is futile for counsel to assure us that Judge Levet was thoroughly informed of what had taken place between November 7, 1966, when he made his order quashing the service of process on Nichimen Tokyo, and November 23, 1966, when he made his order or judgment dismissing the libel, as his opinion of December 30, 1966 demonstrates on its face that he was not.

So we come finally to the motion by Maryland Tuna which led to the opinion and orders of December 30, 1966 from which two of these appeals now before us have been taken. Perhaps realizing that the dismissal of the libel gave the quietus *sub silentio* to the maritime attachment and garnishment, pursuant to Supplemental Rule B(1), counsel for Maryland Tuna made the motion for reargument and/or resettlement, i. e., to vacate Judge Levet's order of November 23, 1966. No affidavit is attached to the notice of motion, we have no briefs pro and con to guide us, nor does it appear that Judge Levet heard any oral argument. The net result, however, is the complete mess that is now presented to us. And, in fairness to Judge Levet, we are frank to say that this mess appears to be wholly attributable to the failure of counsel for Maryland Tuna to make a clear statement to Judge Levet of the sequence of events and the issues involved.

The opinion of December 30, 1966, after some recitals, states that the motion for reargument and/or resettlement of the orders of November 23, 1966 is denied as "libellant has presented no new matters warranting reargument of the motions or resettlement of the orders." Immediately thereafter, however, the opinion proceeds to discuss numerous new matters, namely the attachment and garnishment proceedings that had taken

---

4. Exhibits A and B to appellee's brief in Case I do not contain the endorsements and memoranda which indicate how and when these two proposed orders finally reached Judge Levet.

place after the filing of the opinion and order of November 7, 1966. In other words, the order or judgment of November 23, 1966 makes no reference whatever to the maritime attachment and garnishment proceedings under either Supplemental Rule B(1) or Supplemental Rule C(3), nor does it recite or in any way refer to the letter from counsel for Maryland Tuna above quoted or the letter of response by counsel for Nichimen Tokyo, dated November 23, 1966.

The opinion of December 30, 1966 then proceeds to discuss the issuance of the Summons to Show Cause and its service by the marshal. It comments on the failure to serve Nichimen Tokyo because it was not present in the jurisdiction as pointed out in the previous opinions of October 3, 1966 and November 7, 1966. It also points out that on the return day (before Judge Bonsal) proclamation was made and default noted. All of this, as we view the matter, has nothing to do with the validity and viability of the proceedings pursuant to Supplemental Rule B(1) or the motion for reargument and/or resettlement of the order or judgment of November 23, 1966.

These proceedings pursuant to Supplemental Rule B(1) are disposed of in the opinion of December 30, 1966 by stating, first, that no affidavit that Nichimen Tokyo could not be found in the district "either accompanied the libel or the amended libel, or was submitted to support the libel or the amended libel" as required by the terms of Supplemental Rule B(1). But this was entirely wrong, as we have already referred to just such an affidavit filed on November 9, 1966, promptly after it had been decided that Nichimen Tokyo could not be found in the district. We do not attribute this error to Judge Levet but to the failure of counsel for Maryland Tuna to apprise him of this fact.

Second, the opinion disposes of the Rule B(1) garnishment with the statement that at the time of obtaining the Rule B(1) process (on November 9, 1966) counsel for Maryland Tuna "presumably knew that Nichimen Tokyo was out of the case," because the opinions of October 3, 1966 and November 7, 1966 had said the service of process would be quashed. But, as we have already stated, there is a considerable difference between quashing service of process and dismissing the action, especially if, prior to the dismissal, other proceedings have been commenced over which the court does have jurisdiction.

Then, reference is made to the answer of Nichimen New York, the garnishee, denying that it held any goods, chattels, effects, debts or credits of Nichimen Tokyo. But surely this is a bootstrap argument. All that the service of this answer did was to create an issue which has as yet not been adjudicated.

The rest of the opinion of December 30, 1966, led on by the lure of the two proposed orders that really had nothing to do with the pending motion, meanders on, demonstrating that neither of these orders should be signed, because "the within action is not an action in rem subject to Rule C," and the opinion continues, after considerable discussion, to state that the requirements of the New York State attachment laws have not been complied with. We do not understand that Maryland Tuna had made any argument to the effect that it had attempted to comply with the New York laws governing provisional remedies.

We have no doubt that the order in Case I contained in the opinion of December 30, 1966 is appealable. We conclude this despite the fact that in form it appears to do no more than deny a motion for reargument, and such orders are generally not appealable.[5]

---

5. See Theodoropoulos v. Thompson-Starrett Co., Inc., 418 F.2d 350, 353 (2d Cir. 1969), cert. denied, 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 (May 18, 1970); Vine v. Beneficial Finance Co., Inc., 374 F.2d 627, 632 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); In re Brendan Reilly Associates, Inc., 372 F.2d 235, 238 (2d Cir. 1967); Hines v. Seaboard Air Line R. R. Co.,

Here numerous important new matters are decided for the first time unequivocally, although we think erroneously, such as the determination that the dismissal should stand and carry with it the attachment and garnishment proceeding under Supplemental Rule B(1).[6]

■ Moreover, the motion in both cases, while stated to be for reargument and/or resettlement of the orders of November 23, 1966, complied with the requirements of Fed.R. Civ.P. 59(e) to

the effect that a motion to alter or amend a judgment shall be served no later than 10 days after the entry of the judgment.[7] The significance of this is that a timely motion for reargument filed after the entry of a judgment dismissing a complaint terminates the time for filing an appeal from the judgment of dismissal and, under Fed.R. App.P. 4(a) and its predecessor, Fed.R. Civ.P. 73(a), starts the time for taking an appeal running anew from the date an order denying reargument is entered.[8] The fact that

341 F.2d 229, 231 (2d Cir. 1965); Hawkins v. Lindsley, 327 F.2d 356, 357 (2d Cir. 1964); Spampinato v. M. Breger & Co., Inc., 270 F.2d 46, 48 (2d Cir. 1959), cert. denied, 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363, rehearing denied, 361 U.S. 973, 80 S.Ct. 597, 4 L.Ed.2d 553 (1960); Klein's Outlet, Inc. v. Lipton, 181 F.2d 713, 714 (2d Cir.), cert. denied, 340 U.S. 833, 71 S.Ct. 59, 95 L.Ed. 612 (1950).

6. For the proposition that an order under Fed.R.Civ.P. 59(e) denying reargument may be appealable if new matter arising after the original presentation of the argument is presented, see Theodoropoulos v. Thompson-Starrett Co., Inc., *supra*, 418 F.2d 350, 353 (2d Cir. 1969), cert. denied, 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 (May 18, 1970) (dictum). Cf. Hines v. Seaboard Air Line R. R. Co., *supra*, 341 F.2d 229, 232 (2d Cir. 1965) (under Fed.R.Civ.P. 60(b)).

However, we need not base our decision on whether the new matter gave the motion to reargue any special quality it otherwise would not have possessed. Judge Levet's order pursuant to his opinion of December 30, 1966 explicitly held for the first time that the attachment and garnishment proceeding under Supplemental Rule B(1) could not resuscitate the libel. This order would be appealable in any event either as the vacating of an attachment allegedly obtained improperly, under Swift & Company Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684, 688–689, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), or the denial of a writ of maritime attachment, under Chilean Line, Inc. v. United States, 344 F.2d 757, 759 (2d Cir. 1965). See also Glaser v. North American Uranium & Oil Corp., 222 F.2d 552, 554 (2d Cir. 1955); Republic of Italy v. De Angelis, 206 F.2d 121, 123 (2d Cir. 1953).

7. The motion for reargument and/or resettlement was filed on December 5, 1966,

twelve days after the orders or judgments of November 23, 1966 were entered. Rule 9(m) of the General Rules of the United States District Court for the Southern District of New York provides:

[a] notice of motion for reargument shall be served within ten (10) days after the filing of the court's determination of the original motion * * *.

Such a specific authorization of a post-judgment procedure by local court rule is covered inferentially by the general language of Fed.R.Civ.P. 59, and it makes no difference to appealability that the motion was described as one filed under Southern District Rule 9(m) rather than Fed.R.Civ.P. 59(e). See Gainey v. Brotherhood of Ry. & S. S. Clerks, etc., 303 F.2d 716, 718 (3d Cir. 1962).

The ten-day period expired on December 3, 1966, a Saturday. However, Fed. R.Civ.P. 6(a) provides that if the last day of any period of time prescribed or allowed under the Federal Rules of Civil Procedure falls on a Saturday, the period runs until the next day "which is not a Saturday, a Sunday, or a legal holiday." Therefore, the period within which Maryland Tuna could file a motion for reargument under either Southern District Rule 9(m) or Fed.R.Civ.P. 59(e) was extended to Monday, December 5, and the motion so filed was timely.

8. See Theodoropoulos v. Thompson-Starrett Co., Inc., *supra*, 418 F.2d 350, 353 (2d Cir. 1969), cert. denied, 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 (May 18, 1970); Vine v. Beneficial Finance Co., Inc., supra, 374 F.2d 627, 632 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); 9 J. Moore, Federal Practice ¶ 204.12 [1], at 951 (2d ed. 1969); cf. Terrasi v. South Atlantic Lines, Inc., 226 F.2d 823, 824 (2d Cir. 1955), cert. denied, 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 855 (1956) (motion to reargue denial of motion for a new

the motion is on its face a motion for reargument is merely a matter of form as the effect of this particular species of motion is to draw into question the correctness of the judgment to which it relates. It is the functional equivalent of a motion for a new trial at common law or a motion for a rehearing in suits in equity before the merger brought about by the Federal Rules of Civil Procedure.[9] The judgments of November 23, 1966 thus did not become final until the filing of Judge Levet's opinion of December 30, 1966. Despite the recital in the notice of appeal solely to the orders contained in this opinion of December 30, 1966, we can and do treat the notice as taking an appeal from the judgments of November 23, 1966.[10]

■ Having been defeated at every turn, counsel for Maryland Tuna on January 6, 1967 filed an entirely new complaint stating that the action was "a case of admiralty and maritime jurisdiction" and a "maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure." It charges Nichimen Tokyo with having negligently damaged the cargo of tuna in the amount of $46,311.05, describes Nichimen New York as garnishee, and describes the property of Nichimen Tokyo to be levied on as:

That if defendant, NICHIMEN CO., LTD., TOKYO, cannot be found within this district then all goods, chattels and credits belonging to it within this district, and in particular debts, credits and effects in the possession of NICHIMEN CO., INC., 60 Broad Street, New York, N. Y. including (1) a debt owed to NICHIMEN CO., LTD., TOKYO, by NICHIMEN CO., INC., in the amount of $4,350,000, a long-term loan made in 1965 with annual interest thereon at 7%, (2) the stock certificates of NICHIMEN CO., INC., held by Mr. P. T. Ikeda, Mr. N. Iwatani, and Mr. S. Hiraoka, Directors of NICHIMEN CO., INC., and, respectively, its President, Vice-President

---

trial the equivalent of a motion for rehearing).

A motion for reargument, reconsideration, rehearing or similar nature of a judgment finally disposing of matters before trial, including dismissal of a complaint for want of jurisdiction, can be considered a motion within Fed.R.Civ.P. 59(e) for purposes of Fed.R.App.P. 4(a). See Graddy v. Bonsal, 375 F.2d 764 (2d Cir. 1967) (per curiam) ; Vine v. Beneficial Finance Co., Inc., *supra*, 374 F.2d 627, 632 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967) ; Woodham v. American Cystoscope Co., 335 F.2d 551, 555–556 (5th Cir. 1964) ; Gainey v. Brotherhood of Ry. & S. S. Clerks, etc., *supra*, 303 F.2d 716, 718 (3d Cir. 1962) ; 9 J. Moore, Federal Practice, *supra*, ¶ 204.12 [1], at 951.

9. See, e. g., Bowman v. Loperena, 311 U.S. 262, 266, 61 S.Ct. 201, 85 L.Ed. 177 (1940) ; United States v. Seminole Nation, 299 U.S. 417, 421, 57 S.Ct. 283, 81 L.Ed. 316 (1937) ; Morse v. United States, 270 U.S. 151, 153–154, 46 S.Ct. 241, 70 L.Ed. 518 (1926) ; Kingman v. Western Manufacturing Co., 170 U.S. 675, 678, 18 S.Ct. 786, 42 L.Ed. 1192 (1898) ; Texas & P. Ry. Co. v. Murphy, 111 U.S. 488, 489, 4 S.Ct. 497, 28 L.Ed. 492 (1884) ; Brockett v. Brockett, 43

U.S. (2 How.) 238, 241, 11 L.Ed. 251 (1844). Accord, Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 149–150, 63 S.Ct. 133, 87 L.Ed. 146 (1942) ; Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 137–138, 57 S.Ct. 382, 81 L.Ed. 557 (1937).

10. See, e. g., State Farm Mutual Auto Insurance Co. v. Palmer, 350 U.S. 944, 76 S.Ct. 321, 100 L.Ed. 823 (1956) (per curiam), reversing 225 F.2d 876 (9th Cir. 1955) ; United States v. Ellicott, 223 U.S. 524, 538–539, 32 S.Ct. 334, 56 L.Ed. 535 (1912) ; United States v. Certain Land, etc., 322 F.2d 866, 869 (3d Cir. 1963) ; Altvater v. Battocletti, 300 F.2d 156, 158 (4th Cir. 1962) ; Piatek v. Government Services, Inc., 111 U.S.App.D.C. 308, 296 F.2d 430 (1961) (per curiam) ; Safeway Stores, Inc. v. Coe, 78 U.S.App. D.C. 19, 136 F.2d 771, 773 (1943) ; 6A J. Moore, Federal Practice ¶ 59.15 [1], at 3892 (2d ed. 1966). Accord, Foman v. Davis, 371 U.S. 178, 181–182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ; Hoiness v. United States, 335 U.S. 297, 300–301, 69 S.Ct. 70, 93 L.Ed. 16 (1948) ; Indemnity Insurance Company of North America v. Reisley, 153 F.2d 296, 299 (2d Cir.), cert. denied, 328 U.S. 857, 66 S.Ct. 1349, 90 L.Ed. 1629 (1946).

and Treasurer, which they hold for NICHIMEN CO., LTD., TOKYO, and (3) the interests of NICHIMEN CO., LTD., TOKYO, in the corporate stock of NICHIMEN CO., INC., may be attached by process of maritime attachment and garnishment in the amount of $46,311.05, the sum sued for in this complaint, with interest and costs of the plaintiff.

This is Case III, the last of the three cases involved in these three appeals. With the new complaint, however, there was filed on January 6, 1967 an affidavit stating that Nichimen Tokyo could not be found in the district. Moreover, despite all that had been disclosed concerning the confusion caused by the Summons to Show Cause, pursuant to Supplemental Rule C(3), counsel proceeded to do over again just what he had done before, i. e., he received from the Clerk Form 2, "Process of Maritime Attachment and Garnishment," pursuant to Supplemental Rule B(1), and also, again over his protest and objection, a "Summons to Show Cause," pursuant to Rule C(3). Service was made on the manager of Nichimen New York, as before.

The opening skirmish of the new campaign occurred on the return day of the Summons to Show Cause. After the submission of various affidavits and proposed orders, Judge Ryan directed the garnishee, Nichimen New York, to produce an officer to testify concerning debts owed by Nichimen New York to Nichimen Tokyo, the ownership of the stock certificates "held by Messrs. Ikeda, Iwatani and Hiraoka, Directors and Officers of Nichimen Co., Inc., for Nichimen Co., Ltd., Tokyo," and the interest of Nichimen Tokyo in the stock of Nichimen New York.

The deposition of P. T. Ikeda was taken on March 8, 1967. After a further exchange of affidavits, giving various versions of the prior proceedings in Case I and Case II that we have been at some pains to describe in detail, Judge Ryan, in a memorandum of May 3, 1967 directed that there be a further deposition taken and certain documents produced. Mr. S. Hiraoka and another witness gave further testimony on May 26, 1967. On April 7, 1967 Maryland Tuna had made a motion for an order directing the garnishee to deposit the stock certificates standing in the names of the three Nichimen New York directors and officers "in the Registry of this Court." On these motion papers Judge Ryan attached an "Endorsement of Order," dated October 6, 1969, denying the motion on the ground that the certificates were "not in the country and are not in the possession of or under the control of" Nichimen New York, the garnishee. The third appeal before us is from this order in Case III.

Thus in Case III it would seem to be clear that no attempt has been made to dismiss the new 1967 action for lack of jurisdiction over the person of Nichimen Tokyo. Nor has there been any dismissal of the new Rule B(1) proceeding or the new Rule C(3) proceeding. The order appealed from is interlocutory and not appealable. The appeal in Case III is, accordingly, dismissed.

*The Law Points*

I.

*The Original Supplemental Rule B(1) Maritime Attachment and Garnishment Proceeding Should Not Have Been Dismissed.*

We think we have already sufficiently explained our view that the order of November 23, 1966 dismissing the libel in Case I was erroneous because the dismissal carried with it *sub silentio* the maritime attachment and garnishment proceeding that had been commenced in the interval between November 7, when Judge Levet held that service of process should be quashed and November 23 when he dismissed the libel.

No motion was ever made, so far as we can discern from the record before us, to dismiss the Rule B(1) proceeding. The discussion in the December 30, 1966 opinion on the subject of the Rule B(1) garnishment merely demonstrates that, due to no fault on his part, Judge Levet

did not have accurate knowledge of what had taken place and the legal issues involved.

We shall now discuss in some detail the reasons appearing in Judge Levet's opinion of December 30, 1966 for holding, for the first and only time, that the Rule B(1) proceeding was invalid and ineffective.

Judge Levet seems to have assumed that, as he had decided on November 7, 1966 that the service of process under the amended libel should be quashed, counsel for Maryland Tuna should have known that Nichimen Tokyo was "out of the case" and that his attempt to commence maritime attachment and garnishment proceedings thereafter was illegal. A historical review of the law of maritime attachments, however, fails to support this view.

■ The admiralty proceeding was commenced by the filing of the libel. See Fed.R. Civ.P. 3; General Admiralty Rule 1. Until the entry of the order dismissing the libel Maryland Tuna was free to employ any other method of service by which Nichimen Tokyo could be brought into the District Court. One such method is a Process of Maritime Attachment and Garnishment under Supplemental Rule B(1), which is available only when the defendant cannot be found in the district.

Prior to the decision of the Supreme Court in Manro v. Almeida, 23 U.S. (10 Wheat.) 473, 6 L.Ed. 369 (1825), a writ of maritime attachment was issued only after the marshal or his deputy had returned a warrant of arrest *in personam* that the defendant could not be found within the district. See A. Dunlap, A Treatise on the Practice of Courts of Admiralty in Civil Causes of Maritime Jurisdiction 140–41 (1836).

■ Manro v. Almeida held that the writ could be issued simultaneously with the monition but required a court order to secure this remedy. When General Admiralty Rule 2 was first promulgated in 1844, the requirement for a court order was eliminated. This rule was continued with minor exceptions until July 1, 1966, when Supplemental Rule B(1) became effective. Thus in modern times the writ has issued as of course; however, before attachment could be made pursuant to the writ, the burden remained on the marshal, in theory if not in practice, to ascertain that the respondent could not be found within the district. See D/S A/S Flint v. Sabre Shipping Corp., 228 F.Supp. 384, 387 (E.D.N.Y. 1964), aff'd on other grounds sub nom. Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50 (2d Cir. 1965); The Valmar, 38 F.Supp. 615, 617 (E.D.Pa.1941); 7A J. Moore, Federal Practice ¶ B.07, at 45–47 (Cum. Supp.1969); 2 E. Benedict, Admiralty, Sections 288–89 (6th ed. A. Knauth 1940). Accordingly, General Admiralty Rule 2 did not require the libellant to submit an affidavit that a non-resident respondent could not be found within the district.[11] However, Supplemental Rule B(1) shifted even the theoretical burden of searching for the respondent to the libellant. See Note of the Advisory Committee on Rules, 28 U.S.C.A., Federal Rules of Civil Procedure, Rules 77 to End, at p. 131 (1970). To accomplish this objective, a prerequisite to the issuance of the writ is that a verified complaint with a prayer for attachment "shall be accompanied by an affidavit

---

11. General Admiralty Rule 2:
  Suits in Personam—Process in—Arrest in Same
  In suits *in personam* the mesne process shall be by a simple monition in the nature of a summons to appear and answer to the suit, or by a simple warrant of arrest of the person of the respondent in the nature of a capias, as the libellant may, in his libel or information, pray for or elect; in either

case, with a clause therein to attach his goods and chattels, or credits and effects in the hands of the garnishees named in the libel to the amount sued for, if said respondent shall not be found within the district. But no warrant of arrest of the person of the respondent shall issue unless by special order of the court, on proof of the propriety thereof, by affidavit or otherwise.

signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district."

We have already noted the circumstance that Judge Levet was not aware of the fact that an affidavit that Nichimen Tokyo could not be found in the district had been filed on November 9, 1966. Is it possible that the failure to file this affidavit with the amended libel constitutes a fatal defect, in face of the fact that no such affidavit could then have been made, as Maryland Tuna, at the time of filing the amended libel thought Nichimen Tokyo could be found in the district? We think not. Such a result would be completely at variance with decades of judicial liberality toward the use of writs of maritime attachment, a remedy which the Supreme Court has viewed with favor from the time of Manro v. Almeida to Swift & Company Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (see McCreary, Going for the Jugular Vein: Arrests and Attachments in Admiralty, 28 Ohio St. L.J. 19, 21–22 (1967)) and which Dr. Arthur Browne, a commentator whose influence on the development of American admiralty law cannot be overstated called an "easy and salutary remedy." 2 A. Browne, A Compendious View of the Civil Law, and of the Law of Admiralty 434 (1802). And such a mechanistic ruling would also be contrary to the spirit of Supplemental Rule B(1), which was intended to enlarge the classes of cases in which the libellant could proceed by attachment and garnishment.

Therefore, we hold that the requirement that an affidavit "shall accompany the complaint" is satisfied when a libellant, who has filed a verified complaint with a prayer for attachment but who has proceeded on the reasonable belief that the respondent can be found within the district and later discovers that the respondent is not within the district, files the affidavit required by Rule B(1) within a reasonable time after the discovery is made. The time interval that will be considered "reasonable" will, of course, be determined according to the facts of individual cases. In the instant case, we hold that the filing of the affidavit two days after the filing of Judge Levet's opinion of November 7, 1966 was timely and sufficient.

We are at a loss to explain the extended discussion in Judge Levet's opinion of the failure of Maryland Tuna to comply with the requirements of the New York State attachment laws. State law is irrelevant to the validity of process under Supplemental Rule B(1). See 2 E. Benedict, Admiralty, § 288 at p. 348 (6th ed. A. Knauth 1940). The purpose of the Supplemental Rule was to preserve the ancient process of maritime attachment that had been known to courts of admiralty for centuries. See F. Clerke, Praxis Supremae Curiae Admiralitatis titles 28, 32, translated in J. Hall, Practice and Jurisdiction of the Court of Admiralty 60–67, 70–71 (1809). The remedy, under the terms of Rule B(1), is completely independent of state law and of any state attachment or garnishment procedures, which may be employed by a libellant either instead of, or in addition to the process issued under the Rule.

Judge Levet also implied that Maryland Tuna did not comply with Rule 10 of the Rules of the United States District Court for the Southern District of New York for Admiralty and Maritime Claims in that no proof was submitted that the property sought to be attached belonged to Nichimen Tokyo. The text of Rule 10(a), the section quoted by Judge Levet, is as follows:

(a) In actions in personam where the debts, credits or effects named in any process of maritime attachment and garnishment are not delivered up to the marshal by the garnishee or are denied by him to be the property of the defendant it shall be a sufficient service of such process to leave a copy thereof with such garnishee, or at his usual residence or place of

business, with notice of the property attached. On due return thereof by the marshal the plaintiff, on proof satisfactory to the court that the property belongs to defendant, may proceed to a hearing and final judgment in the cause.

This Rule, operating as it does after the Process of Maritime Attachment and Garnishment is served on the garnishee, is irrelevant to the validity of the issuance of the process under Rule B(1). Furthermore, we do not construe this Rule to require a finding that the attachment was ineffective. All Rule 10(a) seems to require is that the plaintiff prove that the property belongs to the defendant where, as here, the property named in the Process is not delivered up to the marshal by the garnishee, before the District Court can proceed to determine the case on the merits. This conforms to the requirement that the court must obtain jurisdiction before it can issue a judgment against the defendant. The proof required by this local rule can be adduced at the hearing to be conducted on the remand, and Maryland Tuna can avail itself of discovery procedures to secure firsthand and documentary proof of the relationship between Nichimen New York and Nichimen Tokyo and the disclosure of any legal or equitable interests of Nichimen Tokyo in Nichimen New York.

Another reason for the conclusion arrived at in the opinion of December 30, 1966, to the effect that the proceedings under Rule B(1) were invalid, was that Nichimen New York, the garnishee, had served an answer denying that it held any property of or owed any debts to Nichimen Tokyo. These denials should not have been taken at face value. These denials and other similar assertions in various affidavits should be treated as at the most raising issues to be determined in due course in adversary proceedings on the merits in conformity with the Federal Rules of Civil Procedure and the local rules of the District Court.

## II.

*The Order Quashing Service of Process on Nichimen Tokyo in the Libel (Case I) and the Civil Action (Case II) Is Reversed and the Cases Are Remanded.*

The question under New York law, considered against the background of federal constitutional requirements, whether a corporation has been engaged in a "continuous and systematic course of doing business [in New York] so as to warrant a finding of its presence in this jurisdiction" has been the subject of consideration in a great many decisions of the New York courts, some of very recent vintage.[12]

12. See, e. g., Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, cert. denied sub nom. Hilton Hotels (U.K.) Ltd. v. Frummer, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967) ; Bryant v. Finnish National Airline, 15 N.Y.2d 426, 260 N. Y.S.2d 625, 208 N.E.2d 439 (1965) ; Taca International Airline, S. A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965) ; Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2d Cir. 1967), cert. denied, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968) [all under N.Y. CPLR Section 301 (McKinney 1963)] ; Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958) ; Elish v. St. Louis S. W. Ry. Co., 305 N.Y. 267, 112 N.E.2d 842 (1953) ;

Holzer v. Dodge Bros., 233 N.Y. 216, 135 N.E. 268 (1922) ; Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (1917) ; Berner v. United Airlines, Inc., 3 A.D.2d 9, 157 N.Y.S.2d 884 (1st Dep't 1956), aff'd mem., 3 N.Y.2d 1003, 170 N.Y.S.2d 340, 147 N.E.2d 732 (1957). A comparison of Frummer v. Hilton Hotels International, Inc., *supra,* 19 N.Y.2d 533, 281 N.Y.S.2d 441, 227 N.E.2d 851, cert. denied sub nom. Hilton Hotels (U.K.) Ltd. v. Frummer, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967) *and* Gelfand v. Tanner Motor Tours, Ltd., *supra,* 385 F.2d 116 (2d Cir. 1967), cert. denied, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968) *with* Miller v. Surf Properties, Inc., *supra,* 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958) is instructive on the conditions under which

We think a resume of the factual matters in the record before us will make it plain that no definitive determination of this central question of mixed law and fact can properly be made until firsthand and, if possible, documentary evidence has been produced and judicially evaluated relative to the precise and actual relationship between Nichimen Tokyo and Nichimen New York.

On the one hand, as found by Judge Levet, Nichimen Tokyo is a Japanese corporation; it has no office in the United States; it is not licensed to do business in New York; none of its directors or officers had been in the United States for about three years; it has no office or telephone listing in New York; Nichimen New York has separate financial statements and tax returns. The New York corporation does its own financing and sustains its own credit losses on its sales in the United States. The President of Nichimen New York does not go to Japan to confer with officers of Nichimen Tokyo.

On the other hand, while it was contended on behalf of Nichimen Tokyo that Nichimen New York was one of several "subsidiary or related companies with which it transacts business in various places in the world," Judge Levet's finding is "Actually, no relationship of parent and subsidiary exists." The incidental references in the deposition testimony to "the parent company" mean little or nothing. About 90% of the imports of Nichimen New York come from Nichimen Tokyo and about 90% of its exports go to Nichimen Tokyo. The sales of Nichimen New York in 1965 were $144,000,000, on which it made a profit of only $25,000. The two corporations owe one another large sums, on which interest is paid, but on balance Nichimen Tokyo owed more to Nichimen New York than Nichimen New York owed to Nichimen Tokyo at the time of the service of process and later. The stock ownership of Nichimen New York at the time of Judge Levet's decision is obscure and as yet unascertained despite Judge Levet's finding that no stock of Nichimen New York is owned by Nichimen Tokyo. There is testimony by Mr. P. T. Ikeda, the President and a director of Nichimen New York, that "there is no outstanding [stock] of Nichimen New York" at the time he gave his deposition on October 10, 1966, but that the stock had been issued in the names of the three officers and directors, including himself. He did not know whether legally he held it on behalf of Nichimen Tokyo. He added that probably he will pass it along to the next president.

No dividends have ever been paid on the Nichimen New York stock. Nichimen Tokyo has guaranteed loans made to Nichimen New York by American and Japanese banks. Some of the executives of Nichimen New York were formerly executives of Nichimen Tokyo and some of the executives of Nichimen Tokyo

a New York outlet for a foreign corporate defendant will be considered to act as the agent for the defendant so as to permit a finding that the defendant is conducting a continuous and systematic course of business in New York.

The more recent New York decisions have expanded the instances in which a continuous and systematic course of doing business can be found to subject a foreign corporate defendant to *in personam* jurisdiction in New York on causes of action arising outside the State. This development in New York law has occurred because of relaxation of the requirements of Fourteenth Amendment due process in such Supreme Court decisions as International Shoe Co. v. Washington, 326 U.S. 310, 316–320, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) which has made possible the broadening of the bases upon which foreign corporate defendants can be made amenable to suits *in personam* in state courts. However, due process still requires some connection between the forum state and the foreign defendant; there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

were formerly executives of Nichimen New York. On top of all this we have the suspicious circumstance that the certificates of stock were sent to Japan just at the critical time when Maryland Tuna's attachment and garnishment proceeding under Supplemental Rule B(1) was coming to a head. These certificates were later cancelled and new ones issued to other persons.

In this connection it is quite immaterial that the maritime attachment papers were not served on the three individual officers and directors of Nichimen New York in whose names the certificates had been issued. Maryland Tuna does not claim that these individuals held property of Nichimen Tokyo but rather that Nichimen New York, for whom its officers and directors were acting, was an entity in which Nichimen Tokyo had an interest that was subject to attachment. It is clear from the testimony that the individual officers and directors who testified had no knowledge of the real relationship between the New York and the Japanese corporations.

While we have no intention to and we do not prejudge the issues involved in the remand, the separateness of the two corporations does seem to be artificial and contrived with the primary objective of insulating Nichimen Tokyo from United States taxation and amenability to suit in American courts. When the true facts concerning the relationship between the two corporations have been brought to light, there may or may not be a basis for a finding that, taking everything into consideration, Nichimen New York was in fact if not in form the agent of Nichimen Tokyo in New York. Certainly the course of business conducted by Nichimen New York was "continuous and systematic."

The orders appealed from in Case I and Case II are reversed and the cases are remanded for further proceedings not inconsistent with this opinion.

The appeal from the order in Case III is dismissed.

No costs.